# EXHIBIT A

# Michigan Department of Treasury

# Principal Residence Exemption Guidelines

**Issued August 2022**

# TABLE OF CONTENTS

Chapter 1: Background Information     **1**

Chapter 2: Ownership Requirement     **4**

     Individual Ownership     **4**

     Life Estate & Life Lease     **5**

     Owns or is Purchasing a Dwelling on Leased Land     **6**

     Owned by a Business Entity (e.g., LLC, Corporation, Trust)     **6**

     Grantor of Trust     **9**

     Beneficiary of a Trust/Will & Intestate Succession     **10**

     Land Contract Purchaser     **11**

     Corrective Deed     **13**

Chapter 3: Occupancy Requirement     **14**

     Determining Occupancy as a Principal Residence     **14**

     General Occupancy Scenarios     **15**

     Retaining a Principal Residence Exemption While Absent     **16**

     Active Duty Military     **17**

     Nursing Home/Assisted Living Facility and Convalescing     **20**

     Dwelling is Demolished     **22**

Chapter 4: Statutory Disqualifying Factors     **23**

     Claiming Two Principal Residences in Michigan     **23**

     Claiming a Substantially Similar Exemption in Another State     **24**

     Tax Returns: Filed as Non-Resident or as Resident of Another State     **26**

Chapter 5: Claim Requirement     **29**

Claim Process   29

Filing Deadlines and Duration of a Claim   31

Property Owner's Rescission of a Principal Residence Exemption Claim   32

Chapter 6: Adjoining or Contiguous Property   35

Property Classification Requirement   35

Unoccupied Requirement   38

Adjoining or Contiguous Requirement   39

Partial Principal Residence Exemptions Not Permitted   43

Chapter 7: Partial Exemptions   44

Duplexes & Apartments   44

Bed and Breakfasts   45

Operating a Business   46

Two Dwellings on One Parcel   46

Dwelling or Unit that is Rented or Leased   48

Chapter 8: Owner's Conditional Rescission   49

Previously Exempt Property Requirement   49

For Sale Requirement   50

Not Occupied Requirement   50

Not Leased Requirement   51

Not Used for Business or Commercial Purposes Requirement   51

Established a New Principal Residence Requirement   52

Filing Requirement   54

Chapter 9: Foreclosure Entity Conditional Rescission   57

**Foreclosure Entity Versus Owner's Conditional Rescission**      **58**

**Payment of Taxes and Administration Fee Requirement**      **58**

**Filing Requirement**      **59**

**Chapter 10: Denial of a Principal Residence Exemption and Appeal Rights**      **61**

**Assessor and County Denials and Appeal Rights**      **61**

**Michigan Department of Treasury Denial and Appeal Rights**      **64**

**Chapter 11: Taxes and Billing Issues**      **70**

**Local/County Treasurer Tax Bills**      **70**

**Michigan Department of Treasury Tax Bills**      **74**

**Chapter 12: Interest Charged as a Result of a Denial**      **78**

**Interest Charged as a Result of a Denial**      **78**

**Interest Waiver Process**      **79**

**Chapter 13: Request for Principal Residence Exemption – Qualified Error**      **84**

**Process by which an Owner Requests a Principal Residence Exemption-Qualified Error**      **84**

**Qualified Error Defined**      **85**

**Michigan Department of Treasury Review Process**      **87**

**Appeal Rights**      **88**

**Glossary**      **90**

**References**      **95**

**Contact Information**      **98**

**CHAPTER 1: BACKGROUND INFORMATION**

In 1994, the Proposal A property tax reform replaced local school operating millages with two millages to support education. The 6-mill State Education Tax is a statewide tax levied on all property in Michigan that is collected by the State of Michigan to support the School Aid Fund. In addition to the statewide tax, a local operating millage of up to 18 mills is also levied which is collected by the local school district. Owners of property in Michigan who occupy that property as their principal residence may be entitled to the Principal Residence Exemption which would exempt that residence from this local 18- mill tax levy.

In its simplest form, a person who is a Michigan resident and owns and occupies a home could consider that home their principal residence. However, there are many forms of ownership and many circumstances that can cause confusion about which properties qualify for this tax exemption. In addition, the Principal Residence Exemption should not be confused with the Michigan Homestead Property Tax Credit which is a credit that homeowners can claim on their Michigan Income Tax return. See the Homestead Property Tax Credit website for more information.

There are many questions that arise from the application of the Principal Residence Exemption. This set of guidelines is intended to assist taxpayers and local officials in answering those questions. Our goal is to assist those who are eligible to properly claim the exemption and to help others avoid claiming the exemption improperly.

**1.      What is a principal residence exemption?**

A principal residence exemption exempts an owner's principal residence from the tax levied by a local school district for operating purposes, up to 18 mills. (MCL 211.7cc). A principal residence exemption is not an income tax credit.

**2.      What is a principal residence?**

"Principal Residence" means the one place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established. See MCL 211.7dd(c).

"Principal Residence" also includes all of an owner's unoccupied property classified as residential or timber-cutover that is adjoining or contiguous to the dwelling subject to ad valorem taxes and that is owned and occupied by the owner. See MCL 211.7dd(c).

### 3.   What are the statutory eligibility requirements for a principal residence exemption on a fixed, permanent home?

In order to qualify for a principal residence exemption on a dwelling, MCL 211.7cc requires that the property be: (1) owned by a qualified owner as defined by MCL 211.7dd(a); (2) occupied as a principal residence by that owner of the property; (3) none of the disqualifying factors listed in MCL 211.7cc(3) apply; and (4) claimed by the owner of the property by filing an affidavit with the local tax collecting unit in which the property is located.

*See Chapters 2 through 5 to learn more about the ownership, occupancy, disqualifying factors and claim requirements for a principal residence exemption on a fixed, permanent home.*

### 4.   What are the statutory eligibility requirements for a principal residence exemption on an adjoining or contiguous parcel?

In order to qualify for a principal residence exemption on an adjoining or contiguous parcel, the subject parcel must be: (1) owned by an owner as defined by MCL 211.7dd(a); (2) unoccupied; (3) contiguous to the parcel containing the property owner's principal residence; (4) classified as residential or timber-cutover; and (5) claimed by the owner of the property by filing an affidavit with the local tax collecting unit in which the property is located.

*See Chapter 6 to learn more about the statutory eligibility requirements for the principal residence exemption on an adjoining/contiguous parcel.*

### 5.   Who has the burden of proof to determine eligibility for the principal residence exemption?

Under Michigan law, the owner has the burden to prove his or her eligibility for a tax exemption. *Stege v Department of Treasury, 252 Mich App 183, 189; 651 NW2d 164 (2002)*. Burden of proof is defined as a duty placed upon a person to prove or disprove a fact. It also is defined as the amount of proof by which the party with the burden of proof must establish or refute a disputed factual issue. In Michigan, a person must show by a preponderance of the evidence that he or she meets the qualification for the principal residence exemption. In other words, the person must show enough evidence to make it more likely than not that the person claiming the principal residence meets the qualifications for the principal residence exemption.

**6.    Does the Assessor, Michigan Department of Treasury, County Treasurer, and County Equalization Director have the authority to request documents from the owner claiming a principal residence exemption to prove he or she met the statutory eligibility requirements for the principal residence exemption?**

Yes. The Assessor, Michigan Department of Treasury, County Treasurer, and County Equalization Director may request a variety of information from the taxpayer including a copy of the original land contract, both sides of a driver's license, and/or voter registration information, utility bills, insurance statements, bank statements, pet licenses, among other items to prove a person met the statutory eligibility requirements for the principal residence exemption. A denial of a person's claim for the principal residence exemption may be issued if the person is unable to substantiate his or her claim for the principal residence exemption.

**CHAPTER 2: OWNERSHIP REQUIREMENT**

In order to qualify for a principal residence exemption, MCL 211.7cc requires that the property be owned by an owner as defined by MCL 211.7dd(a). In accordance with MCL 211.7cc and MCL 211.7dd, only those owners listed in MCL 211.7dd(a) qualify as an owner eligible to receive the exemption. An "owner" as the term relates to the principal residence exemption is defined in MCL 211.7dd(a) as follows:

i. A person who owns property or who is purchasing property under a land contract.
ii. A person who is a partial owner of property.
iii. A person who owns property as a result of being a beneficiary of a will or trust or as a result of intestate succession.
iv. A person who owns or is purchasing a dwelling on leased land.
v. A person holding a life lease in property previously sold or transferred to another.
vi. A grantor who has placed the property in a revocable trust or a qualified personal residence trust.
vii. The sole present beneficiary of a trust if the trust purchased or acquired the property as a principal residence for the sole present beneficiary of the trust, and the sole present beneficiary of the trust is totally and permanently disabled. As used in this subparagraph, "totally and permanently disabled" means disability as defined in section 216 of title II of the Social Security act, 42 USC 416, without regard as to whether the sole present beneficiary of the trust has reached the age of retirement.
viii. A cooperative housing corporation.
ix. A facility as defined by former Public Act 440 of 1976 and registered under the continuing care community disclosure act, PA 448 of 2014, MCL 554.901 to 554.993.

Additionally, MCL 211.7dd(b) defines a "person" to mean an "individual." Although MCL 211.7dd did not define the term "individual," the Michigan Court of Appeals in *Vanderwerp v Plainfield Twp, 278 Mich App 624; 752 N.W.2d 479 (2008),* held "[a] 'person' means only an 'individual,' as opposed to a business organization, when considering that term in relation to MCL 211.7cc."

**INDIVIDUAL OWNERSHIP**

**7.     Are renters eligible for the principal residence exemption?**

No. A person must be an owner as defined by MCL 211.7dd(a) to be eligible for the principal residence exemption.

**8.     Dawn Smith deeds Blue Acre to Chris, a married man. Chris and his wife occupy the property as their principal residence. Does Chris qualify as an owner that is eligible for the principal residence exemption?**

Yes. A person must be an owner as defined by MCL 211.7dd(a) to be eligible for the principal residence exemption. Since Chris is a person and he is listed on the deed as the grantee, he is an owner that is eligible for the principal residence exemption.

**9.     Dawn Smith deeds Blue Acre to Chris, a married man. The deed does not list Chris' wife as a grantee. Chris and his wife occupy the property as their principal residence. Does Chris' wife qualify as an owner that is eligible for the principal residence exemption?**

No. Since Chris' wife is not listed on the deed as a grantee, she is not an owner of Blue Acre. As a result, she is not eligible for the principal residence exemption. However, since Chris is an owner he may qualify for the principal residence exemption.

**LIFE ESTATE & LIFE LEASE**

**10.     Chris owns Blue Acre. Chris deeds Blue Acre to his daughter but failed to reserve a life estate. Chris and his daughter have a verbal agreement that Chris has a life estate in the property. Is Chris an owner that is eligible for the principal residence exemption?**

No. Any ownership interest in real property must be in writing to be valid. Since there was only a verbal agreement, Chris is not an owner that is eligible for the principal residence exemption.

**11.     Chris owns Blue Acre. Chris grants John Doe a life estate. John Doe never owned the property prior to acquiring the life estate. Is John an owner that is eligible for the principal residence exemption?**

Yes. A life estate holder is considered a "partial owner" of the property. As a result, John Doe is an owner that is eligible for the principal residence exemption.

**12.     Jane owns Blue Acre. Jane grants John Doe a life lease. John Doe never owned the property prior to acquiring the life lease. Is John Doe an owner that is eligible for the principal residence exemption?**

No. Unlike a life estate, a life lease holder is not considered a partial owner of the property. The life lease holder only has the right to occupy the property during that person's lifetime. In addition, MCL 211.7dd(a) specifically requires that the life lease holder to have been an owner of the property prior to acquiring the life lease in order to be eligible as an owner for the principal residence exemption. Since John Doe was not an owner of the property prior to acquiring the life lease on the property, he is not an owner that is eligible for the principal residence exemption.

**13.    Blue Acre is owned by Jane Doe. Jane subsequently deeded the property to Chris. However, according to the deed, Grantor, Jane Doe, reserves a life estate for herself during the Grantor's lifetime coupled with an unrestricted power to convey during the Grantor's lifetime, which includes the power to sell, gift, mortgage, lease and otherwise dispose of the property, and to retain the proceeds from the conveyance. Jane is alive and does not occupy the property. Chris does occupy the property. Is Chris an owner that is eligible for the principal residence exemption?**

No. While Chris is occupying the property as a principal residence, he is not eligible to receive a principal residence exemption because he does not hold a current ownership interest. This is an example of a lady bird deed. A lady bird deed allows property to be automatically transferred to a new owner when the current owner dies, without the need to go through probate. It also gives the current owner retained control over the property, including the right to change his or her mind about the transfer. "Lady Bird" deeds are the subject of Standard 9.3 of the Michigan Land Title Standards (6th Edition) which states "[t]he holder of a life estate, coupled with an absolute power to dispose of the fee estate by inter vivos conveyance, can convey a fee simple estate during the lifetime of the holder. If the power is not exercised, the gift over becomes effective." For further information regarding Lady Bird Deeds, see *In re Tobias Estates, unpublished per curiam opinion of the Court of Appeals issued May 10, 2012 (Docket No. 304852)* or Standard 9.3 of the Michigan Land Title Standards (6th Edition).

<u>**OWNS OR IS PURCHASING A DWELLING ON LEASED LAND**</u>

**14.    Chris leases Blue Acre. Chris owns a dwelling and places it on Blue Acre, the leased land. Is Chris an owner that is eligible for the principal residence exemption?**

Chris is an owner of the dwelling, but he is not the owner of the leased land. As such, Chris is only eligible for the principal residence exemption on the dwelling but not the leased land.

*The Assessor in these situations must assign a parcel number to the leased land and a separate parcel number to the dwelling on the leased land.*

**OWNED BY A BUSINESS ENTITY (E.G., LLC, CORPORATION, TRUST)**

**15.  Blue Acre is owned by Smith, LLC, a Michigan Limited Liability Company (LLC). The limited liability company is not a cooperative housing corporation or facility as defined by Public Act 448 of 2014 (formerly known as a registered living care facility). Jane is the sole member of the limited liability company and occupies the property. Does Smith, LLC, a Michigan Limited Liability Company (LLC), qualify as an owner that is eligible for the principal residence exemption?**

No. MCL 211.7dd(a) provided definitions of "owner" for the purposes of MCL 211.7cc, and these definitions refer to a "person." A "person" means only an "individual," as opposed to a business organization, when considering that term in relation to MCL 211.7cc. Because a "person" is limited only to an individual, the LLC cannot be an owner pursuant to MCL 211.7dd(a)(i) through (vii). Further, the LLC is not a cooperative housing corporation or a registered living care facility; thus, it is not an "owner" as defined by MCL 211.7dd(a)(viii) or (ix). *Vanderwerp v Plainfield Twp, 278 Mich App 624; 752 N.W.2d 479 (2008).*

**16.  Does Jane, as the sole individual owner/member of Smith, LLC, a Michigan Limited Liability Company (LLC), qualify as an owner that is eligible for the principal residence exemption?**

No. A member of a limited liability company holds no interest in specific limited liability company property. A member's interest in a limited liability company is considered personal property. As a result, Jane as the sole member of a limited liability company is not an owner that is eligible for the principal residence exemption. *Vanderwerp v Plainfield Twp, 278 Mich App 624; 752 N.W.2d 479 (2008) & MCL 450.4504*.

**17.  Blue Acre is owned by Smith Inc., a Michigan Corporation (Corporation). The Corporation consists of the shareholder, John Smith, who occupies the property as his principal residence. The Corporation is not a cooperative housing corporation and is not a facility as defined by Public Act 448 of 2014 (formerly known as a registered living care facility). Does the Corporation qualify as an owner that is eligible for the principal residence exemption?**

No. MCL 211.7dd(b) provided definitions of "owner" for the purposes of MCL 211.7cc, and several of these definitions refer to a "person."  A "person" means only an "individual," as opposed to a business organization, when considering that term in relation to MCL 211.7cc. See MCL 211.7dd(c).  Because a "person" is limited only to an individual, the Corporation cannot be an owner pursuant to MCL 211.7dd(a)(i) through (vii). Further, the Corporation is not a cooperative housing corporation or a registered living care facility; thus, it is not an "owner" as

defined by MCL 211.7dd(b)(vii) or (viii). *Vanderwerp v Plainfield Twp, 278 Mich App 624; 752 N.W.2d 479 (2008).*

**18.    Does John Smith, as a person and individual shareholder of Smith Inc., a Michigan Corporation, qualify as an owner that is eligible for the principal residence exemption?**

No. A corporation is a legal entity that is distinct from its shareholders. Thus, ownership of corporate property is vested in the corporation itself and not the shareholders. As a result, John Smith, as a shareholder of a corporation, is not an owner that is eligible for the principal residence exemption. *Power v Michigan Department of Treasury, 301 Mich. App. 226; 835 NW2d 622 (2013).*

**19.    Chris deeds Blue Acre to the Chris Limited Liability Company (a 99% ownership interest) and to John Doe (a 1% ownership interest). John Doe occupies the property as his principal residence. Is John Doe an owner of the property that is eligible for the principal residence exemption? If so, is John Doe eligible for only a 1% principal residence exemption?**

Yes. John Doe is considered a partial owner of the property. John Doe, however, is eligible for a 100% principal residence exemption if he owns and occupies Blue Acre as his principal residence and claims the exemption.

**20.    Blue Acre is owned by a cooperative housing corporation. Does the cooperative housing corporation qualify as an owner that is eligible for the principal residence exemption?**

Yes. Even though a cooperative housing corporation is a legal entity, MCL 211.7dd(a) provides that a cooperative housing corporation qualifies as an owner that is eligible for a principal residence exemption. *Vanderwerp v Plainfield Twp, 278 Mich App 624; 752 N.W.2d 479 (2008).*

**21.    Is a cooperative housing corporation entitled to a 100% principal residence exemption?**

In accordance with MCL 211.7cc(28), a cooperative housing corporation is entitled to a full or partial exemption based on the percentage of units owned and occupied by the tenant stockholders. The principal residence exemption is reduced by the taxable value of the units that are not owned and occupied by tenant stockholders. MCL 211.7cc(28) requires the cooperative housing corporation to file all of the following with the local tax collecting unit in which the cooperative housing corporation is located within the time period prescribed in subsection (2) in order to be entitled to a full or partial exemption:

(a) An affidavit form (Principal Residence Exemption (PRE) Affidavit (Form 2368)).

(b) A statement of the total number of units owned by the cooperative housing corporation and occupied as the principal residence of a tenant stockholder as of the date of the filing under this subsection.

(c) list that includes the name and address of each tenant stockholder of the cooperative housing corporation occupying a unit in the cooperative housing corporation as his or her principal residence as of the date of the filing under this subsection.

(d) A statement of the total number of units of the cooperative housing corporation on which an exemption under this section was claimed and that were transferred in the tax year immediately preceding the tax year in which the filing under this section was made.

## 22. Blue Acre is owned by a facility registered under the Continuing Care Community Disclosure Act. Does the facility qualify as an owner that is eligible for the principal residence exemption?

Yes. Even though a facility registered under the Continuing Care Community Disclosure Act is a legal entity, MCL 211.7dd(a) specifically lists a registered facility as an owner that is eligible for a principal residence exemption. A facility registered under the Continuing Care Community Disclosure Act is entitled to a 100% principal residence exemption. It is encouraged that Assessors request documents to substantiate that the facility is in fact registered under the Continuing Care Community Disclosure Act.

## 23. Chris deeds Blue Acre to the Chris Living Trust. Chris occupies the property as his principal residence. Does the Chris Living Trust qualify as an owner that is eligible for the principal residence exemption?

No. Because a person is limited only to an individual, the Trust cannot be an owner that is eligible for the principal residence exemption. Further, the Trust is not a cooperative housing corporation or a facility as defined by Public Act 448 of 2014 (formerly known as a registered living care facility). As a result, the Trust does not qualify as an "owner" as defined by MCL 211.7dd and is not eligible to receive a principal residence exemption.

## GRANTOR OF TRUST

## 24. In what circumstances is a grantor of a trust an owner that is eligible for the principal residence exemption?

A grantor of a trust is an owner that is eligible for the principal residence exemption if: (1) the grantor of the trust is an individual/person and (2) the trust is either a revocable trust or a qualified personal residence trust.

**25.    What is a qualified personal residence trust?**

A "qualified personal residence trust" is an irrevocable trust, funded with cash and the personal residence of the grantor, who retains the right to dwell in the residence for a specified term of years. Black's Law Dictionary Deluxe (9th ed. 2009). The trust document must state the trust is a qualified personal residence trust in order for it to be considered a qualified personal residence trust.

**26.    Blue Acre is owned by Smith Living Trust, which is a revocable trust. John is the grantor of the Trust and occupies the property. Is John an owner that is eligible for the principal residence exemption?**

Yes. John is eligible for the principal residence exemption because he is a grantor of the trust and the trust is a revocable trust.

**27.    Blue Acre is owned by the Smith Living Trust, an irrevocable trust. John is the grantor of the trust. Is John an owner eligible for the principal residence exemption?**

No. While John is the grantor of the trust, since the trust is an irrevocable trust and not a revocable or qualified personal residence trust, John is not an eligible owner for the principal residence exemption, even if he occupies the property as his principal residence.

**28.    Blue Acre is owned by the Smith Living Trust, an irrevocable qualified personal residence trust. John is the grantor of the trust and occupies the property. According to the terms of the irrevocable qualified personal residence trust, John retains the right to occupy the property for 20 years. Is John an owner that is eligible for the principal residence exemption? If so, for how long?**

Yes. John is an owner that is eligible to claim the principal residence exemption since he is the grantor of the trust and the trust is a qualified personal residence trust. John is only eligible for the principal residence exemption for the 20 years so long as he continues to occupy the property as his principal residence for the entire 20 years.

**<u>BENEFICIARY OF A TRUST/WILL & INTESTATE SUCCESSION</u>**

**29.    Under what circumstances is a beneficiary of a trust or will, who is not totally and permanently disabled, an owner that is eligible for the principal residence exemption?**

A person is an owner that is eligible for the principal residence exemption if: (1) the person is a beneficiary of the trust or will and (2) the terms of the trust or will provide ownership rights to that beneficiary. (MCL 211.7dd(a)(iii)). As a result, in order to qualify as an "owner" as that term is used in MCL 211.7dd(a)(iii), a person must be more than just a beneficiary of the trust but that person must also own the property as a result of being a beneficiary of the trust or will. Each individual trust and the terms of the trust must be analyzed on a case-by-case basis to determine if the beneficiary qualified as an owner as defined in MCL 211.7dd(a)(iii) and is eligible to claim and receive the principal residence exemption.

### 30.    Under what circumstances is a beneficiary of a trust, who is totally and permanently disabled, an owner that is eligible for the principal residence exemption?

A person is an owner that is eligible for the principal residence exemption if: (1) the person is the sole beneficiary of the trust; (2) the trust purchased/acquired the property for the sole beneficiary; and; (3) the sole beneficiary is totally and permanently disabled as defined in Section 216 of Title II of the Social Security Act, 42 USC 416.

### 31.    What does it mean to be totally and permanently disabled?

Totally and permanently disabled is defined as: (1) the inability to engage in any substantial gainful activity by reason of any medically determined physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months; and/or (2) blindness. (See Section 216 of Title II of the Social Security Act, 42 USC 416.)

### 32.    What documents would prove a person is totally and permanently disabled?

Social Security statements along with doctor's affidavits will help a person prove that he or she is totally and permanently disabled.

### 33.    What does "Intestate Succession" mean?

Intestate Succession is the method used to distribute property owned by a person who dies without a valid will.

### 34.    If a person dies without a valid will, how does one determine who is the owner?

If a person dies without a valid will, a person must refer to Michigan Statute, MCL 700.2101-2106 to determine ownership rights in the property.

**LAND CONTRACT PURCHASER**

**35.    Chris owns Blue Acre. Chris verbally agrees to sell Blue Acre to Sarah for $12,000. Is Sarah considered a land contract purchaser that is eligible for the principal residence exemption?**

No. Sarah is not considered a land contract purchaser since the land contract was not in writing and did not meet the statute of frauds requirements to be a valid land contract.

**36.    What are the "Statute of Frauds" requirements for a land contract to be valid?**

In order to satisfy the Statute of Frauds, the land contract must: (1) be in writing; (2) identify the parties to the contract (e.g., seller and buyer); (3) identify the property to be sold (e.g., lists a legal description of the property); (4) list the terms of the sale (e.g., sales price); and (5) be signed by the vendor (seller).

**37.    Sarah entered into a written lease agreement with an option to purchase Blue Acre. Is Sarah considered a land contract purchaser that is eligible for the principal residence exemption?**

No. Leasing a property with an option to buy is considered a rental agreement and not a land contract. However, Sarah would be considered an owner of the property once she exercised her option to buy.

**38.    Chris owns Blue Acre. Chris enters into a written land contract to sell Blue Acre to Sarah for $12,000. Chris, the land contract seller, failed to sign the land contract. Is Sarah considered a land contract purchaser that is eligible for the principal residence exemption?**

No. The court in *In Re Estate of Moukalled, 269 Mich App 708, 721-722; 714 NW2d 400 (2006)*, determined "A land contract vendee purchases property upon the signing of the land contract and thereafter acquires an equitable interest in that property…At the point of the signing of the land contract, 'the vendee acquires "seisin" and a present interest in the property that may be sold, devised, or encumbered".'" As such, in accordance with the court holding in Moukalled, since the land vendor, Chris, did not sign the land contract, the land contract did not become effective, and Sarah did not receive equitable title to the property. As a result, Sarah is not considered a land contract purchaser pursuant to Moukalled.

**39.    Does a land contract have to be recorded or notarized to be valid?**

No. Michigan law does not require land contracts to be notarized or recorded to be valid. However, it is recommended that the land contract be notarized and recorded in order to

protect your ownership interest in the property. In particular, as summarized in Michigan Land Title Standard 3.18, "A conveyance of real property is void as against the grantee in a subsequent recorded conveyance given for a valuable consideration, if the subsequent grantee has no knowledge of the prior conveyance and the prior conveyance is not recorded or is recorded after the recording of the subsequent conveyance." As such, if there is no recorded evidence of a vendor's interest in the real property described in a land contract, the unrecorded interest is void against a subsequent purchaser for value and without notice.

### 40. Does the land contract seller and/or buyer of the property have to notify the Assessor of the transfer by land contract?

Yes. Even though Michigan does not require that the land contract be notarized or recorded to be valid, MCL 211.27a(10) requires that the buyer, grantee, or transferee of a property notify the local assessing office when a transfer of ownership occurs by filing a Property Transfer Affidavit (Form 2766) within 45 days of a transfer of ownership.

### 41. Can the Assessor request a copy of the unrecorded land contract?

Yes. A person must prove, by a preponderance of the evidence, that he or she is entitled to an exemption. *ProMed Healthcare v City of Kalamazoo, 249 Mich App 490; 644 N.W.2d 47 (2002)*. As part of a due diligence review of a claim, the Assessor, Michigan Department of Treasury, County Treasurer, and/or County Equalization Director may request a variety of information from the taxpayer including a copy of the original land contract, both sides of a driver's license, and/or voters registration information, utility bills, insurance statements, bank statements, pet license, among other items to prove a person meets the statutory eligibility requirements for the principal residence exemption.

*Failure to provide any documents requested to establish ownership and occupancy may result in a denial of a person's claim for the principal residence exemption.*

### 42. Is a Memorandum of Land Contract sufficient to prove that a validly executed land contract exists?

No. The basic purpose of a memorandum of land contract is to serve as evidence of a purported executed land contract but it is not considered to be a conveyance of ownership. As a result, the Michigan Department of Treasury recommends Assessors require the taxpayer to provide a copy of the original contract to prove that, in fact, there is a validly executed land contract conveying ownership to the purchaser and not a rental agreement, option to purchase, or other agreement that is not a land contract.

**CORRECTIVE DEED**

**43.    On June 1, 2008, Chris quit claim deeds Blue Acre to the Chris, Limited Liability Company (LLC). On April 1, 2016, Chris executes a "Corrective Quit Claim Deed". The deed states, "This deed is given to reserve a life estate for Chris on the Quit Claim Deed executed on June 1, 2008, effectively transferring and reserving a life estate on the property on June 1, 2008." Is the corrective quit claim deed evidence that Chris is an owner that is eligible for the principal residence exemption? If so, on what date?**

No. A corrective deed is not effective to give Chris ownership in the property for any of the years. Corrective deeds are proper only in limited circumstances to correct minor defects in prior deeds but not substantial changes in the name of the grantee or nature of title of the grantee. Since Chris deeded the property to a limited liability company on June 1, 2008, he was no longer an owner that was eligible for the principal residence exemption as of June 1, 2008. *Donald E. Lewallen and Ronald L. Lewallen v Porter Twp unpublished opinion per curiam of the Court of Appeals, issued February 20, 2014 (Docket No. 431811)* & Michigan Land Title Standard 3.3.

# CHAPTER 3: OCCUPANCY REQUIREMENT

In order to qualify for a principal residence exemption on a fixed, permanent dwelling, MCL 211.7cc requires that the property be occupied as a principal residence by that owner of the property.

## DETERMINING OCCUPANCY AS A PRINCIPAL RESIDENCE

**44. What does "Occupancy" mean?**

"Occupancy" is not defined by statute. Michigan Courts define occupancy to mean, "to reside in as an owner." In turn, "reside" is defined as "to dwell permanently or continuously." Michigan Courts further held that "to be entitled to the exemption, an owner claiming the exemption has a continuing requirement to *use* the property as his or her principal residence." As such, it is clear that a person must dwell either permanently or continuously at a property and use the property as his or principal residence to "occupy" the property. *Tenbusch v Michigan Department of Treasury, unpublished opinion per curiam of the Court of Appeals, issued March 5, 2019 (Docket No. 344239) & Schubert v Michigan Department of Treasury, 322 Mich App, 439; 912 N.W.2d 569 (2017).*

**45. What factors indicate that a person is occupying a fixed, permanent dwelling as a principal residence?**

This list is not all-inclusive and no one item is particularly controlling. Ultimately, the taxpayer has the burden to prove his or her eligibility for the tax exemption. However, factors that help determine whether a person occupies a property as a principal residence include where a person: maintains a driver's license; votes; maintains active utility service throughout the year; keeps his or her most important possessions; houses his or her family; maintains religious organization membership, club and lodge memberships; buys automobile licenses; maintains a mailing address and banking location; operates a business; sues for divorce; and/or licenses pets.

**46. What documents indicate that a person is occupying a fixed, permanent dwelling as a principal residence?**

This list is not all-inclusive and no one item is particularly controlling. Ultimately, the taxpayer has the burden to prove his or her eligibility for the tax exemption. If the property is the person's principal residence, that person should be able to show ample documentation bearing the address of the parcel at issue that is consistent with a person's principal residence. Occupancy as a person's principal residence is more than just stating the intent to reside there.

However, a person's intent is reflected in the address listed on the following documents: driver's license; voter registration record; vehicle registration; income tax returns showing the mailing address; utility bills showing active service throughout the year and mailing address and person who is to be billed; bank/charge accounts showing purchases within the vicinity of the property; medical billings from physicians within the vicinity of the property; and/or insurance policies.

**47. Is there a bright-line rule that certain factors and documents combined together equal occupancy as a principal residence?**

No. In general, there is no bright-line rule that certain factors and documents combined together equal occupancy as a principal residence. One must look at the totality of circumstances to determine whether or not a person occupied a property as one's true, fixed, permanent home. Under the totality of circumstances test, one must focus on all the factors and documents of a particular case, rather than any one factor or document.

<u>**GENERAL OCCUPANCY SCENARIOS**</u>

**48. Chris owns Blue Acre and claims that property as his principal residence. However, Chris' driver's license, tax returns, voter registration, vehicle registration, and all mail list his business address. Does Chris occupy Blue Acre as his principal residence?**

Chris has the burden of proof to confirm that he occupied Blue Acre as his true, fixed, permanent home. Here, Chris' documents suggest that he is residing at his business and not at Blue Acre. Chris could still provide a variety of other documents to prove occupancy of Blue Acre as his true, fixed, permanent home such as utility bills, insurance statements, bank statements, pet licenses, and any other document listing him at Blue Acre. In addition, a factor that should be considered is whether or not there are living quarters at Chris' business.

*By Michigan law, Chris' Michigan driver's license and voter records are required to list the address of Chris' home where he resides. Chris should change his legal documents to Blue Acre if he is occupying Blue Acre as his true, fixed, permanent home.*

**49. Chris owns Blue Acre and claims that property as his principal residence. Chris does not have a driver's license, does not own a car, does not vote, and does not file income tax returns. Does Chris occupy Blue Acre as his principal residence?**

Chris has the burden of proof to confirm that he occupied Blue Acre as his true, fixed, permanent home. Here, there are no documents to indicate that Chris does in fact reside at Blue Acre as his fixed, permanent home. While Chris does not have a driver's license, own a car,

vote, or file tax returns, these are just some of the documents that can indicate occupancy, but they are not all-inclusive. Chris could still provide a variety of other documents to prove occupancy of Blue Acre as his true, fixed, permanent home such as utility bills, insurance statements, bank statements, pet licenses and any other document listing him at Blue Acre.

**50.  Chris owns Blue Acre, which is located in Lansing, Michigan. Chris also owns Red Acre, which is located on Houghton Lake, Michigan. Chris claims that Red Acre is his principal residence. Chris' driver's license and voter records list Red Acre. Chris works in Lansing during the week and all of his mail is delivered to Blue Acre. Chris' utility bills for Red Acre only indicate that Chris used Red Acre during the summer months. Does Chris occupy Red Acre as his principal residence?**

While Chris' driver's license and voter records do list Red Acre, these documents are only some documents used to determine occupancy as a principal residence. Based on the totality of circumstances test, the greater weight of the evidence suggests that Chris resides at Blue Acre as his principal residence and Red Acre is a seasonal home. Specifically, the fact that all of Chris' mail is delivered to Blue Acre, Chris works in Lansing, and the utility bills only indicate usage during the summer months suggests that Chris resides at Blue Acre and Red Acre was a seasonal home.

## RETAINING A PRINCIPAL RESIDENCE EXEMPTION WHILE ABSENT: GENERAL SCENARIOS

**51.  Chris owns Blue Acre and claims that property as his principal residence. Chris' driver's license, tax returns, voter records and vehicle records list Blue Acre. Chris is absent from Blue Acre due to work obligations. Is Chris able to retain the principal residence exemption on Blue Acre during his absence?**

If Chris did own and occupy the property as his principal residence prior to his absence from Blue Acre, Chris may retain the principal residence exemption so long as he intends to return to the property as a principal residence.

**52.  How does one determine if a person intends to return to the property as his or her true, fixed, permanent home?**

This list is not all-inclusive and no one item is particularly controlling. Ultimately, the taxpayer has the burden to prove his or her eligibility for the tax exemption. Intent to return to the property as a principal residence is more than just stating that a person intends to return. A person's intent is reflected in the address listed on the same types of documents one looks at to determine if a person occupied the property as one's residence. These documents are: driver's license; voter registration record; vehicle registration; income tax returns showing the

mailing address; utility bills showing service and mailing address and person who is to be billed; bank/charge accounts showing purchases within the vicinity of the property; medical billings from physicians within the vicinity of the property; and/or insurance policies. In addition, other factors to consider are if the person's personal possessions are still in the property while absent; length of absence; whether there are non-owners residing at the property; and whether the property is being leased.

**53.    Chris owns Blue Acre as his principal residence. Chris is absent from Blue Acre since he is in prison. Prior to his prison sentence, Chris did occupy the property as his principal residence. Is Chris able to retain the principal residence exemption on Blue Acre during his absence?**

Chris has the burden of proof to confirm that he intends to return to Blue Acre as his true, fixed, permanent home after his prison sentence. Each person's situation and facts must be determined on a case-by-case basis. If Chris rented the property during his absence, Chris has abandoned his intent to return. In addition, if the length of Chris' prison sentence is a life sentence with no possibility of parole, then Chris has no intent to return.

**54.    Chris owns Blue Acre and claims that property as his principal residence. Chris resides in Florida for six months during the fall and winter months and Michigan for the remainder of the year. Is Chris able to retain the principal residence exemption on Blue Acre during his absence?**

Occupancy for six months out of the year by itself does not prove a person occupied a property as a fixed, permanent residence and/or prove an intent to return to the property as a fixed, permanent residence. The length of occupancy is just one factor to determine occupancy and intent to return. In addition, the mere statement that one occupies and intends return is not sufficient. If Blue Acre is truly Chris' principal residence and he intends to return to the property as his fixed, permanent residence, Chris should be able to show ample documentation bearing the address of the parcel at issue that is consistent with a person's principal residence.

**55.    Chris owns Blue Acre and claims that property as his principal residence. Chris dies on July 27, 2021. Is Chris able to retain the principal residence exemption for the 2021 tax year and future years?**

Chris is eligible to retain the principal residence exemption for the 2021 tax year only. If a person dies, he or she is no longer eligible for the principal residence exemption since he or she is no longer able to occupy the property as a principal residence. In addition, a deceased person has no intent to return to the property as a principal residence. The principal residence exemption must be removed on December 31st of the year of the death. The principal residence

exemption should remain off the property for subsequent years unless a new owner claims the principal residence exemption.

### RETAINING A PRINCIPAL RESIDENCE EXEMPTION WHILE ON ACTIVE DUTY MILITARY

**56.    What are the requirements for a person to retain the principal residence exemption while on active duty in the Armed Forces of the United States?**

If the person owned and occupied the property as a principal residence but is now absent from the property as a result of active duty obligations, the exemption may be retained if the property is not rented or leased and the owner intends to return to occupy the property as a principal residence upon completion of his or her active duty in the armed forces of the United States. If the property is rented or leased while absent from the property, the owner may still retain the exemption if the owner files a Principal Residence Exemption Active Duty Military Affidavit (Form 4660) with the Assessor of local tax collecting unit, on or before May 1, attesting that it is his or her intent to return to occupy the property as a principal residence upon completion of his or her active duty in the armed forces of the United States. If the owner timely filed Form 4660, the owner can only retain the exemption for three years if the property continues to be rented or leased. If the owner did not file or timely file a Principal Residence Exemption Active Duty Military Affidavit (Form 4660), the owner is not entitled to the PRE and the Assessor should deny the exemption.

*The Assessor and Board of Review have no authority to grant an untimely filed Principal Residence Exemption Active Duty Military Affidavit (Form 4660).*

**57.    Chris is on active duty in the Armed Forces of the United States, stationed in North Carolina. Chris purchased Blue Acre in Michigan. Blue Acre will be his principal residence upon retiring from the service in 20 years. Blue Acre is not rented. Does Chris qualify for the principal residence exemption on Blue Acre?**

No. Chris must have owned and occupied the property as his principal residence to initially qualify for the principal residence exemption. Since Chris never occupied the property as his principal residence, he is not eligible for the principal residence exemption.

*An owner is not able to claim an intent to return to a property if he or she never resided at the property as his or her principal residence initially.*

**58.    Chris owned and occupied Blue Acre as his principal residence for 10 years. Due to his active duty obligations in the Armed Forces of the United States, he will be stationed in North Carolina for the next three years. During his absence, Blue Acre will remain empty and not**

**rented. Is Chris able to retain the principal residence exemption on Blue Acre while he is absent?**

Since Chris did own and occupy the property as his principal residence and the property was not rented, Chris may be able to retain the principal residence exemption so long as he intends to return to the property as his principal residence.

**59.    Chris owned and occupied Blue Acre as his principal residence for 10 years. Due to his active duty obligations in the Armed Forces of the United States, he will be stationed in North Carolina for the 2019, 2020, and 2021 years. During his absence, he rented Blue Acre to Heather. Chris failed to file the** Principal Residence Exemption Active Duty Military Affidavit (Form 4660)**. Is Chris able to retain the principal residence exemption on Blue Acre for the 2019, 2020, and 2021 tax years?**

No. If property is rented during an absence, the owner on active duty in the Armed Forces of the United States may only retain the principal residence exemption if the owner files a Principal Residence Exemption Active Duty Military Affidavit (Form 4660) with the Assessor on or before May 1, attesting that it is his or her intent to return to occupy the dwelling as a principal residence upon completion of active duty in the Armed Forces of the United States. Since the property was rented and Chris failed to file the Principal Residence Exemption Active Duty Military Affidavit (Form 4660), he is not eligible to retain the principal residence exemption for the 2019, 2020, and 2021 tax years.

*The Board of Review has no authority to grant an untimely filed* Principal Residence Exemption Active Duty Military Affidavit (Form 4660).

**60.    Chris filed a timely** Principal Residence Exemption Active Duty Military Affidavit (Form 4660) **on April 1, 2018. Chris met all the conditions to retain a principal residence exemption on Blue Acre while absent as a result of active duty in the Armed Forces of the United States. As a result, Chris was able to retain the principal residence exemption on Blue Acre for the 2018, 2019, and 2020 tax years. On April 1, 2021, Chris filed a second** Principal Residence Exemption Active Duty Military Affidavit (Form 4660) **since Chris is still absent as a result of his active duty military obligations and Blue Acre is still rented. Is Chris able to retain the principal residence exemption on Blue Acre while he is absent for the 2021 year and subsequent years?**

No. MCL 211.7dd(c) specifically allows an owner on active duty in the Armed Forces of the United States to retain a principal residence exemption for only three years while absent if he or she rented the property. Since Chris rented the property and retained the principal residence

exemption in 2018, 2019, and 2020, Chris is no longer eligible to retain the principal residence exemption for a fourth year in 2021.

**61.    Chris filed a timely Principal Residence Exemption Active Duty Military Affidavit (Form 4660) on April 1, 2018. Chris met all the conditions to retain a principal residence exemption on Blue Acre while absent on active duty in the Armed Forces of the United States. As a result, Chris was able to retain the principal residence exemption on Blue Acre for the 2018, 2019 and 2020 tax years. As of 2020, Chris no longer rents Blue Acre. Chris is still absent from Blue Acre as a result of his active duty military obligations. Is Chris able to retain the principal residence exemption on Blue Acre while he is absent for the 2021 tax year and subsequent years?**

Since the property is no longer rented, Chris may be able to retain the principal residence exemption so long as he intends to return to the property as his principal residence and the property remains unrented.

**62.    Chris meets all the conditions to retain a principal residence exemption on Blue Acre while absent on active duty in the Armed Forces of the United States. Does Chris have to file the Principal Residence Exemption Active Duty Military Affidavit (Form 4660) for each year that Blue Acre is rented?**

Chris is only required to file the Principal Residence Exemption Active Duty Military Affidavit (Form 4660) once, with the Assessor on or before May 1 for the first year Chris rents the property. Chris may then continue to rent the property and retain the exemption for up to three years so long as he continues to intend to return to the property as his principal residence.

## RETAINING A PRINCIPAL RESIDENCE EXEMPTION WHILE AT A NURSING HOME/ASSISTED LIVING FACILITY AND CONVALESCING

**63.    What are the requirements for a person to retain the principal residence exemption while in a nursing home/ assisted living facility or who is convalescing?**

An owner who previously occupied the property as his or her principal residence, but presently resides in a nursing home or assisted living facility or, if residing there solely for purposes of convalescence, any other location, may retain the exemption *if he or she manifests an intent to return* by satisfying <u>all</u> of the following conditions:

1. The owner continues to own the property while residing in the nursing home or assisted living facility or any other location for convalescence;

2. The owner has not established a new principal residence;

3. The owner maintains or provides for the maintenance of the property while residing in the nursing home or assisted living facility; and

4. **Beginning with the 2018 tax year,** the property is not leased and is not used for any business or commercial purpose. (Public Act 133 of 2018 eliminated the "is not occupied" requirement for the 2018 tax year and subsequent years.)

**64.   What does convalescence mean?**

Convalescence is a state of recovering from a disease, operation, or injury. A convalescent may choose to be cared for at home or a relative's home rather than in a nursing home or assisted living center. For example, a person who has just had a stroke and who is recovering and rehabilitating at a relative's home is an example of a convalescent.

**65.   Chris moves to a nursing home in 2018. Chris is very ill and there is no way that he is returning to the property as his principal residence as a result of his illness. The property is not leased. Chris' driver's license, voter records, and vehicle records still list the subject property as his residence. Can Chris retain the principal residence exemption while in the nursing home?**

Do not look at the illness and/or whether they are capable of returning to the property. So long as the owner continues to own the property, has not established a new principal residence, maintains or provides for the maintenance of the property, and the property is not leased, he or she is able to retain the principal residence exemption.

**66.   Chris moves to a nursing home in 2018. Since 2018, the property is unoccupied, not leased. Chris changed his driver's license, voter records and vehicle records to the nursing home. Can Chris retain the principal residence exemption while in the nursing home?**

Chris would be able to retain the principal residence exemption while in the nursing home since Chris still owns the property, he has not established a new principal residence, he maintained the property and the property was not leased or used for business or commercial purposes.

**67.   Chris has owned and occupied a property as his principal residence since 1962. Chris is now 80 years old and needs some assistance due to health reasons. Chris moved to and is now living in a nursing home. Chris allows his son Bob to live in the property while he is away. Bob does not pay rent. Chris continues to pay the utilities and upkeep on the property and**

**retains his personal possessions at the property. Can Chris retain the principal residence exemption while in the nursing home for the 2021 tax year?**

Yes. Chris can retain the PRE for the 2021 tax year while in the nursing home since he met the intent to return requirements listed in MCL 211.7cc(5). Specifically, while in a nursing home, Chris continued to own the property; he has not established a new principal residence; he maintained the property; and he did not lease the property or use it for business or commercial purposes. Chris can retain the principal residence exemption for future years, so long as these conditions are met.

**68.   Chris has owned and occupied a property as his principal residence since 1962. Chris is now 80 years old and needs some assistance due to health reasons. Chris does not want to reside in a nursing home or assisted living center. Instead, in 2021 Chris moved to, and is now living with his daughter while receiving health care. Chris allows his son Bob to live in the property while he is away. Bob does not pay rent. Chris continues to pay the utilities and upkeep on the property and retains his personal possessions at the property. Can Chris retain the principal residence exemption while he is absent for the 2021 tax year?**

Yes. Chris can retain the PRE for the 2021 tax year while convalescing since he met the intent to return requirements listed in MCL 211.7cc(5). Specifically, while convalescing, Chris continued to own the property; he has not established a new principal residence; he maintained the property; and he did not lease the property or use it for business or commercial purposes. Chris can retain the principal residence exemption for future years, so long as these conditions are met.

## RETAINING A PRINCIPAL RESIDENCE EXEMPTION IF DWELLING IS DEMOLISHED

**69.   What are the requirements for a person to retain the principal residence exemption if the principal residence was demolished?**

An owner of property who previously occupied and claimed that property as a principal residence, but has vacated due to damage or destruction by an accident, act of God, or act of another person without the owner's consent, may retain the exemption on that property for the tax year in which the damage or destruction occurred and the immediately succeeding two tax years if the owner manifests an intent to return. In accordance with MCL 211.7cc(33), the intent to return would be met by satisfying all of the following:

1. The owner continues to own the property while absent due to the demolition of destruction of a dwelling on that property;

2. The owner has not established a new principal residence;

3. The owner provides for reconstruction of the principal residence for purposes of occupying the reconstructed dwelling upon its completion; and

4. The property is not occupied, leased, or used for business or commercial purpose.

## 70. Does the owner have to file a form in order to retain the principal residence exemption if the principal residence is demolished?

No form is required. However, the intent to return must be met by satisfying the above listed 4 requirements.

## 71. If the principal residence is demolished, how long can a person retain a principal residence exemption?

If the person met all of the intent to return requirements, a person can only retain the principal residence exemption for the tax year in which the damage or destruction occurred and the immediately succeeding two tax years.

*If the owner has not completed the reconstruction of the dwelling and re-occupied the property as a principal residence within this time frame, the Assessor is required to remove the principal residence exemption.*

# CHAPTER 4: DISQUALIFYING FACTORS

Even if a person owned and occupied a property as his or her principal residence, he or she may not be eligible for the principal residence exemption if the following disqualifying factors listed in MCL 211.7cc(2) and MCL 211.7cc(3) apply:

1.  A person may only claim one principal residence exemption.

2.  A married couple who are required to or who do file joint Michigan income tax returns are entitled to only one principal residence exemption.

3.  That person has claimed a substantially similar exemption, deduction, or credit on property in another state.

4.  That person or his or her spouse owns property in a state other than this state for which that person or his or her spouse claims an exemption, deduction, or credit substantially similar to the exemption provided under this section, unless that person and his or her spouse file separate income tax returns.

5.  That person has filed a nonresident Michigan income tax return, except active duty military personnel stationed in this state with his or her principal residence in this state.

6.  That person has filed an income tax return in a state other than this state as a resident, except active duty military personnel stationed in this state with his or her principal residence in this state.

## CLAIMING TWO PRINCIPAL RESIDENCES IN MICHIGAN

### 72.    Chris owns Blue Acre in Houghton Lake, Michigan and Red Acre in Lansing, Michigan. Can Chris claim a principal residence exemption on Blue Acre and Red Acre?

No. A person is entitled to only one principal residence exemption. Chris can only claim the principal residence exemption on the property that he owns and is occupying as his principal residence.

### 73.    Is it possible for a person to receive a principal residence exemption on more than one home?

Yes, but only for a limited period of time and only in the following instances:

1. If a person owned and occupied a new principal residence on or before June 1 or November 1 and timely filed a Principal Residence Exemption (PRE) Affidavit (Form 2368), he or she is entitled to a principal residence exemption for that year's summer and/or winter taxes. When a person "timely" rescinds the principal residence exemption on an old property, it will not take effect until December 31st of the year the rescission is filed. As a result, the "timely" rescinded principal residence exemption will remain on the property for the same tax year the new claim for a principal residence exemption was filed and granted.

2. In addition, MCL 211.7cc(5) allows an owner to retain a principal residence exemption on property previously exempt as that owner's principal residence for up to three years if that property is not occupied, is for sale, is not leased, and is not used for any business or commercial purpose by "timely" filing a Conditional Rescission of Principal Residence Exemption (Form 4640) and that person has filed a new Principal Residence Exemption Affidavit (Form 2368) for eligible property in Michigan.

*See **Chapter 5** to learn more about a rescission of a principal residence exemption. See **Chapter 8** to learn more about a conditional rescission of a principal residence exemption.*

## 74.  When may a married couple receive two principal residence exemptions in Michigan?

A married couple **"may"** receive two principal residence exemptions in Michigan if all the following apply:

1. Each are owners of the property they claim to be their principal residence;

2. Each claim a separate principal residence exemption on the property they allege to be their principal residence;

3. Each occupy as their principal residence, the property they allege to be their principal residence;

4. Each file separate state and federal tax returns; and

5. None of the other disqualifying factors listed in MCL 211.7cc(3) apply.

## CLAIMING A SUBSTANTIALLY SIMILAR EXEMPTION IN ANOTHER STATE

## 75.  What is a "Substantially Similar Exemption?"

A "*Substantially Similar Exemption*" means the Michigan principal residence exemption and the other state's exemption statute requirements to receive the exemption are substantially similar. (*i.e.,* it must be owned and occupied as a principal residence to receive the exemption). It does not mean a person receives a substantially similar tax savings. *Levenfeld v County of Berrien, unpublished opinion per curiam of the Court of Appeals, issued January 12, 2012 (Docket No. 300358).*

### 76.    What does "claim for a similar exemption" mean?

A claim for a similar exemption occurs at the time of the "filing or granting of that exemption" in the other state.

### 77.    Is there a penalty for claiming a similar exemption in another state and in Michigan?

Yes. MCL 211.7cc(3) prescribes a $500 penalty for a person who claimed a Michigan principal residence exemption and a substantially similar exemption in another state. In addition, to the $500 penalty, the owner's principal residence exemption should be denied for tax years the owner received a similar exemption in another state (up to the current and previous three years) resulting in a substantial amount of taxes and interest owed. The penalty shall be distributed in the same manner as interest is distributed under MCL 211.7cc(25).

### 78.    When may a married couple receive a principal residence exemption in Michigan and a substantially similar exemption, deduction, or credit, in another state?

A married couple **"may"** receive a principal residence exemption in Michigan and a substantially similar exemption in another state if all the following apply:

1.  The spouse claiming the principal residence exemption in Michigan is the owner of the Michigan property;

2.  The spouse claiming the principal residence in Michigan occupied the Michigan property as his or her principal residence and not as a seasonal home;

3.  The spouse claiming the principal residence exemption in Michigan did not also claim a substantially similar exemption in the other state;

4.  Separate state and federal tax returns are filed; and

5.  None of the other disqualifying factors listed in MCL 211.7cc(3) apply.

**79.   Does the Assessor, Michigan Department of Treasury, County Treasurer, or the County Equalization Director have the authority to request the taxpayer to confirm he or she did not claim a similar exemption in another state?**

Yes. MCL 211.7cc(3)(a) requires that owners claiming a principal residence exemption complete the Principal Residence Exemption Affidavit for Similar Exemptions in Other States (Form 5565) certifying that he or she is not receiving a substantially similar exemption, deduction, or credit, regardless of amount, in another state, upon request by the Assessor, Michigan Department of Treasury, County Treasurer, or the County Equalization Director. This form must be returned within 30 days of the date this request was issued.

**80.   Chris owns and occupies Blue Acre in Michigan as his principal residence. Chris also owns and claims a homestead exemption on Red Acre in Florida. Since Chris owns and occupies Blue Acre in Michigan as his principal residence, is Chris eligible for the principal residence exemption of Blue Acre in Michigan?**

No. Even though Chris owns and occupies Blue Acre in Michigan as his principal residence, since Chris owns and claims a substantially similar exemption on Red Acre in Florida, he is not eligible for the principal residence exemption on Blue Acre in Michigan.

**81.   Chris was denied the principal residence exemption for the 2018 through 2021 tax years since he claimed a similar exemption in Florida for these years. Subsequently, Chris rescinded his Florida exemption and paid the additional tax due on his Florida property for the 2018 through 2021 tax years. Is Chris entitled to the principal residence exemption in Michigan since he paid the additional tax in Florida for the years denied in Michigan?**

MCL 211.7cc(3) prohibits a person from rescinding a substantially similar exemption, deduction, or credit claimed in another state in order to qualify for the Michigan principal residence exemption for any years denied, if the Assessor, the Michigan Department of Treasury, or a County denied an existing claim for a principal residence exemption.

As a result, since Chris "claimed" a similar exemption in another state, he is not eligible for the principal residence exemption in Michigan. Chris is liable for the taxes and interest owed as result of the principal residence exemption denial and Chris is subject to a $500 penalty.

**TAX RETURNS: FILED AS NON-RESIDENT OR RESIDENT OF ANOTHER STATE**

**82.   Chris owns and occupies Blue Acre in Michigan as his principal residence. Chris files non-resident Michigan tax returns. Is Chris eligible for the principal residence exemption on Blue Acre in Michigan?**

No. Chris owns and occupies Blue Acre in Michigan as his principal residence. However, since Chris filed non-resident Michigan tax returns, he is not eligible for the principal residence exemption on Blue Acre in Michigan.

**83.   Chris owns and occupies Blue Acre in Michigan as his principal residence. Because of Chris' work obligations, he worked in California. Chris files California tax returns as a resident of California. Chris intends to return to the Michigan property as his principal residence. Is Chris eligible for the principal residence exemption on Blue Acre in Michigan?**

No. Chris owns, occupies, and intends to return to Blue Acre in Michigan as his principal residence. However, since Chris filed California tax returns as a resident of California, he is not eligible for the principal residence exemption on Blue Acre in Michigan.

**84.   Chris owns and occupies Blue Acre in Michigan as his principal residence. Chris is on active duty in the Armed Forces of the United States and is stationed in Michigan. Chris files non-resident Michigan tax returns. Is Chris eligible for the principal residence exemption on Blue Acre in Michigan?**

Yes. Active duty military personnel stationed in the state of Michigan may file non-resident Michigan tax returns and still be eligible for the principal residence exemption. As a result, even though Chris filed non-resident Michigan tax returns, he is not disqualified from receiving the exemption. Because Chris is on active duty in the Armed Forces of the United States and he is stationed in Michigan, Chris is eligible for the principal residence exemption if he owns and occupies Blue Acre in Michigan as his principal residence.

**85.   Chris owns and occupies Blue Acre in Michigan as his principal residence. Chris is on active duty in the Armed Forces of the United States and is stationed in Michigan. Chris files California tax returns as a resident of California. Is Chris eligible for the principal residence exemption on Blue Acre in Michigan?**

Yes. Active duty military personnel stationed in the state of Michigan may file tax returns in another state as a resident of that state and still be eligible for the principal residence exemption. As a result, even though Chris filed California tax returns as a resident of California, he is not disqualified from receiving the exemption. Because Chris is on active duty in the Armed Forces of the United States and he is stationed in Michigan, Chris is eligible for the principal residence exemption if he owns and occupies Blue Acre in Michigan as his principal residence.

**86.   Chris owns and occupies Blue Acre in Michigan as his principal residence. Chris is on active duty in the Armed Forces of the United States and is stationed in California. Chris files**

**non-resident Michigan tax returns. Is Chris eligible for the principal residence exemption on Blue Acre in Michigan?**

No. While Chris is on active duty in the Armed Forces of the United States, he is stationed in California and not in Michigan. Since Chris is not stationed in Michigan and he filed non-resident Michigan tax returns, Chris is not eligible for the principal residence exemption on Blue Acre in Michigan.

**87.    Chris owns and occupies Blue Acre in Michigan as his principal residence. Chris is on active duty in the Armed Forces of the United States and is stationed in California. Chris files tax returns as a resident of California. Is Chris eligible for the principal residence exemption on Blue Acre in Michigan?**

No. While Chris is on active duty in the Armed Forces of the United States, he is stationed in California and not in Michigan. Since Chris is not stationed in Michigan and he filed California tax returns as a resident of California, Chris is not eligible for the principal residence exemption on Blue Acre in Michigan.

# CHAPTER 5: CLAIM REQUIREMENT

A person who owns and occupies a property as his or her principal residence and meets all the other eligibility requirements for the exemption must claim the principal residence exemption in order to receive the principal residence exemption.

## CLAIM PROCESS

**88. How does a person claim a principal residence exemption?**

To claim a principal residence exemption, a person who meets all the eligibility requirements for the exemption must complete and file a Principal Residence Exemption Affidavit (Form 2368) with the Assessor for the city or township in which the property is located.

**89. Where can a person obtain a Principal Residence Exemption Affidavit (Form 2368)?**

A Principal Residence Exemption Affidavit (Form 2368) can be obtained from a closing statement preparer (e.g., Title Company) or from the Assessor. A person can also obtain the Principal Residence Exemption Affidavit (Form 2368) online at www.michigan.gov/PRE.

*Do not complete or file the Principal Residence Exemption Affidavit (Form 2368) at the closing if the property is not going to be your principal residence or you did not meet the requirements for the principal residence exemption.*

**90. Are closing statement preparers liable to a buyer if the Principal Residence Exemption Affidavit (Form 2368) if not provided to the buyer or filed for the buyer?**

Closing statement preparers are required to provide the Principal Residence Exemption Affidavit (Form 2368) and other principal residence exemption related forms at closing. However, failure to provide the Principal Residence Exemption Affidavit (Form 2368), or file the form, does not create a cause of action at law or in equity against the closing statement preparer.

**91. If a property is owned by a trust, who should complete and sign the Principal Residence Exemption Affidavit (Form 2368)?**

Assuming the grantor or beneficiary of the trust is an owner eligible for the principal residence exemption, the grantor or beneficiary of the trust who is occupying the property as his or her principal residence should complete and sign the Principal Residence Exemption Affidavit (Form 2368). Complete the form using the grantor's or beneficiary's name. (e.g., Chris Smith, as Grantor of the Chris Smith Revocable Trust)

*See Chapter 2 to learn more about when a grantor or beneficiary of a trust is an owner that is eligible to claim the principal residence exemption.*

**92.    What if the grantor or beneficiary of the trust is unable to complete and sign the Principal Residence Exemption Affidavit (Form 2368)?**

The trustee of the trust may sign on the grantor's or beneficiary's behalf. Complete the form using the grantor's or beneficiary's name. (e.g., Chris Smith, Trustee of the Bob Jones Trust, on behalf of Bob Jones, Grantor of the Bob Jones Revocable Trust)

**93.    Chris and his children, Jane and Jack, are co-owners of Blue Acre. Only Chris occupies Blue Acre as his principal residence. Do Chris and his children, Jane and Jack, all have to sign the Principal Residence Exemption Affidavit (Form 2368)?**

No. Only Chris, the owner who is occupying Blue Acre as his principal residence, should complete and sign the Principal Residence Exemption Affidavit (Form 2368). Chris' children, Jane and Jack, would not sign the Principal Residence Exemption Affidavit (Form 2368) since they do not meet the statutory requirements to claim and receive the principal residence exemption.

**94.    Chris owns two parcels: Blue Acre and Red Acre. Blue Acre is located in Lansing, Michigan and contains a dwelling that Chris resides at the majority of the year. Red Acre is located on Houghton Lake, Michigan and contains Chris' cottage which Chris resides at on weekends and during summer months. Because of the high price of lake front property, the taxable value for Chris' cottage on Red Acre is more than his home on Blue Acre. Chris notices that he would receive substantially more property tax savings if he claimed the principal residence exemption on Red Acre, the cottage property. Can Chris claim the principal residence exemption on Red Acre, the cottage property?**

No. Chris is only eligible to claim the principal residence exemption on Blue Acre, the property that he owns and occupies as his principal residence.

*An owner does not have the ability to claim a principal residence exemption based on a better property tax savings. An owner is only eligible to claim a principal residence exemption on the one place where an owner of the property has his or her true, fixed, and permanent home, if he or she meets the eligibility requirements for the principal residence exemption.*

**95.    Chris owns two parcels: Blue Acre and Red Acre. Each property has a separate parcel number. Chris qualifies for the principal residence exemption on Blue Acre since he owns and occupies Blue Acre as his principal residence. Chris also qualifies for the principal residence**

exemption on Red Acre since it is classed residential, unoccupied and is adjoining or contiguous to Blue Acre. Can Chris claim and list the parcel numbers for Blue Acre and Red Acre on one Principal Residence Exemption Affidavit (Form 2368) or is a separate Principal Residence Exemption Affidavit (Form 2368) required to be completed for each parcel?

A separate Principal Residence Exemption Affidavit (Form 2368) is required for each property Chris claims as his principal residence.

**96.    When a parcel is split or combined into one parcel, does an owner have to file a new Principal Residence Exemption Affidavit (Form 2368)?**

Yes. New parcel numbers are assigned when a parcel is split or when a parcel combination is completed. If the parcel or parcels qualify for the principal residence exemption, a new Principal Residence Exemption Affidavit (Form 2368) must be filed with the Assessor.

**FILING DEADLINES AND DURATION OF A CLAIM**

**97.    Is there a deadline for filing a Principal Residence Exemption Affidavit (Form 2368)?**

Yes. The deadlines for a property owner to file a Principal Residence Exemption Affidavit (Form 2368) are on or before June 1 (for the summer tax levy) or on or before November 1 (for the winter tax levy).

**98.    When will I begin to receive the principal residence exemption?**

A valid Principal Residence Exemption Affidavit (Form 2368) filed on or before June 1 of the year the principal residence exemption is being claimed will reduce that year's property taxes beginning with the summer tax levy. A valid Principal Residence Exemption Affidavit (Form 2368) filed at any time from June 2 through November 1 will reduce that year's property taxes beginning with the winter tax levy.

**99.    If I was eligible for the principal residence exemption but missed the June 1 or November 1 filing deadline, may I still claim the principal residence exemption?**

Yes. The owner must file "Form 2368 Principal Residence Exemption Affidavit" and claim the principal residence exemption for the current and previous three years. Once received, the assessor can grant the exemption assuming the assessor believes the owner met the requirements for the PRE. This can be done at any time during the year.

The July or December Board of Review have no authority to grant the exemption

**100.  A person that qualified for a principal residence exemption, but did not claim the principal residence exemption, dies. Can the estate file on the deceased owner's behalf?**

Yes. The estate of an owner who owned and occupied the property as a principal residence on June 1 or November 1 for which the principal residence exemption was not on the tax roll may file "Form 2368 Principal Residence Exemption Affidavit" to claim the principal residence exemption for the current and previous three years on behalf of the estate of the owner.

**101.  What years may the July or December Board of Review consider and grant valid untimely filed principal residence exemption claims that are not on the tax roll?**

None. Effective July 11, 2022,  The July and December Board of Review have no authority to grant the principal residence exemption.

*See the Board of Review website and associated resources to learn more about the Board of Review.*

**102.  How long does the person who validly claimed the principal residence exemption continue to receive the exemption?**

The principal residence exemption will remain on the property for future years for as long as the person who claimed the principal residence exemption meets the qualifications for a principal residence exemption.

**PROPERTY OWNER'S RESCISSION OF A PRINCIPAL RESIDENCE EXEMPTION CLAIM**

**103.  The property is no longer the owner's principal residence. What is the responsibility of the owner who claimed the principal residence exemption?**

Not more than 90 days after exempted property is no longer used as a principal residence by the owner claiming an exemption, that owner shall rescind the claim for exemption by filing a Request to Rescind Principal Residence Exemption (PRE) (Form 2602) with the Assessor.

**104.  Where can a person obtain a Request to Rescind Principal Residence Exemption (PRE) (Form 2602)?**

A Request to Rescind Principal Residence Exemption (PRE) (Form 2602) can be obtained from a closing statement preparer or from the Assessor. A person can also obtain the Request to Rescind Principal Residence Exemption (PRE) (Form 2602), online at www.michigan.gov/PRE.

*Closing statement preparers are required to provide the* Request to Rescind Principal Residence Exemption (PRE) (Form 2602) *and other principal residence exemption related forms at closing. However, failure to provide the* Request to Rescind Principal Residence Exemption (PRE) (Form 2602), *or any other principal residence exemption related form, does not create a cause of action at law or in equity against the closing statement preparer.*

### 105. If a timely Request to Rescind Principal Residence Exemption (PRE) (Form 2602) is filed, when is the principal residence exemption removed from the tax roll?

The principal residence exemption will be removed from the tax roll on December 31st of the year in which the timely Request to Rescind Principal Residence Exemption (PRE) (Form 2602) was filed.

### 106. The property owner who claimed the principal residence exemption is now deceased. Must the claim for exemption be rescinded?

Yes. If a person dies, he or she is no longer eligible for the principal residence exemption since he or she is no longer able to occupy the property as a principal residence. In addition, there is no intent to return to the property as a principal residence. The personal representative of the estate of the deceased, or trustee of the trust of the deceased, should rescind the claim of exemption within 90 days of the owner's death by filing a Request to Rescind Principal Residence Exemption (PRE) (Form 2602) with the Assessor.

### 107. After a divorce, must the claim for the principal residence exemption be rescinded? If so by whom?

The spouse who no longer owns and occupies the property as his or her principal residence must rescind the claim for exemption by filing a Request to Rescind Principal Residence Exemption (PRE) (Form 2602) with the Assessor.

### 108. If the lender foreclosed on a mortgage, must the claim for the principal residence exemption be rescinded?

The owner/mortgagor is considered an owner through the redemption period. If the owner/mortgagor no longer occupies the property as a principal residence during the redemption period, the owner/mortgagor must rescind the claim for exemption by filing a Request to Rescind Principal Residence Exemption (PRE) (Form 2602) with the Assessor within 90 days of the date the owner/mortgagor no longer occupies the property as his or her principal residence. If the redemption period has expired, the owner/mortgagor must file a

Request to Rescind Principal Residence Exemption (PRE) (Form 2602) within 90 days of the date the redemption period expired since he or she is no longer considered an owner.

**109.  Are there any penalties and/or additional taxes owed if any owner fails to file or timely file a Request to Rescind Principal Residence Exemption (PRE) (Form 2602)?**

Yes. An owner who fails to file or timely file a rescission as required by law is subject to a penalty of $5.00 per day for each separate failure beginning after the 90 days have elapsed, up to a maximum of $200.00. Also, a person may be found guilty of perjury, guilty of a misdemeanor, imprisonment of not more than one year, fines between $1,000 to $5,000 and public service of 500 to 1,500 hours. Additionally, the principal residence exemption claim may be denied which would result in a substantial amount of taxes and interest being owed. (MCL 211.120)

*See Chapters 10 and 11 to learn more about denials of principal residence exemption claims including taxes and interest that is owed as a result of a denial.*

**110.  Are there any penalties and/or any additional taxes and interest owed for claiming a principal residence exemption on a property if it was not my principal residence?**

Yes. An owner may be found guilty of perjury, guilty of a misdemeanor, imprisonment of not more than one year, fines between $1,000 to $5,000 and public service of 500 to 1,500 hours. Additionally, the principal residence exemption claim may be denied which would result in a substantial amount of taxes and interest being owed. (MCL 211.120)

*See Chapters 10 and 11 to learn more about denials of principal residence exemptions including taxes and interest that is owed as a result of a denial.*

# CHAPTER 6: ADJOINING OR CONTIGUOUS PROPERTY

In accordance with MCL 211.7dd(c), a "Principal Residence" includes all of an owner's unoccupied property classified as residential or timber-cutover that is adjoining or contiguous to the dwelling subject to ad valorem taxes and that is owned and occupied by the owner. The statute does not define the terms "adjoining" or "contiguous". However, according to Black's Law Dictionary Deluxe 9th ed. (West Publishing Co.) "adjoining" means, "touching; sharing a common boundary" and "contiguous" means, "touching at a point or along a boundary".

As a result, in order to qualify for a principal residence exemption on an adjoining or contiguous parcel, the subject parcel must be: (1) owned by an owner as defined by MCL 211.7dd(a); (2) unoccupied; (3) adjoining or contiguous (i.e. touch or share a common boundary) with the parcel containing the property owner's principal residence; (4) classified as residential or timber-cutover; and (5) claimed by the owner of the property by filing an affidavit with the local tax collecting unit in which the property is located.

*See Chapter 2 to learn more about ownership requirements and see Chapter 5 to learn more about claim requirements.*

## PROPERTY CLASSIFICATION REQUIREMENT

## 111.  What types of property classifications are there?

MCL 211.34c defines there are six real property classifications which are the following:

1. Residential
2. Agricultural
3. Commercial
4. Industrial
5. Developmental
6. Timber Cut-over

## 112.  What property classification is required for an adjoining or contiguous property to be eligible for the principal residence exemption.

MCL 211.7dd(c) requires that the property must be classified as ***residential*** or ***timber-cutover*** to qualify for a principal residence exemption on adjoining or contiguous property. If the property is classified as Agricultural, Commercial, Industrial or Developmental, the property is not eligible for the principal residence exemption.

**113. How is property classification determined?**

Property is classified according to its current use. The highest and best use of the property has been, and continues to be, the standard upon which an Assessor values property but is not how its classification is determined. These are two different and distinct issues; valuation does not drive the property's classification. See MCL 211.34c and the Michigan State Tax Commission Property Classification Guidelines.

**114. When is property classification determined?**

Michigan Law MCL 211.34c requires that not later than the first Monday in March each year, the local Assessor shall classify all assessable property in their jurisdictional boundaries according to the definitions contained in this section.

**115. How does a person dispute the classification of a property?**

Property owners that disagree with the Assessor's decision regarding the property's classification must file a petition with the March Board of Review to appeal the classification.

*See the Board of Review website and associated resources to learn more about the Board of Review.*

**116. Chris owns and occupies Blue Acre as his principal residence. Chris also owns Red Acre. Red Acre is a vacant parcel and classified commercial. Red Acre is adjoining or contiguous to Blue Acre. Is Chris eligible for the principal residence exemption on Red Acre, the adjoining or contiguous property?**



No. The property must be classified as residential or timber-cutover to qualify for a principal residence exemption on adjoining or contiguous property. Property classified as commercial, industrial, agricultural, or developmental disqualifies an owner from receiving a principal residence exemption on an adjoining or contiguous property. Since Red Acre is classed commercial, it is not eligible for the principal residence exemption.

**117.  Chris owns and occupies a fixed, permanent dwelling on Blue Acre as his principal residence. Blue Acre is classified commercial. Chris also owns Red Acre. Red Acre is a vacant parcel and classified residential. Red Acre is adjoining or contiguous to Blue Acre. Is Chris eligible for the principal residence exemption on Red Acre, the adjoining or contiguous property?**



Yes. Chris qualifies for the principal residence exemption on Red Acre since Red Acre is unoccupied, classified residential and is adjoining or contiguous to Blue Acre, Chris' principal residence. Property classification is only relevant when determining eligibility for the adjoining or contiguous parcel. As such, even though Blue Acre is classed commercial, the classification of Blue Acre does not affect the eligibility for the PRE on Red Acre. Furthermore, Chris is eligible for the principal residence exemption on Blue Acre so long as Chris owns and occupies Blue Acre as his principal residence.

**118.  Chris owns two parcels, Blue Acre and Red Acre. Blue Acre and Red Acre contain a dwelling which is Chris' principal residence. Blue Acre is classified residential. Red Acre is classified commercial and is adjoining or contiguous to Blue Acre. Is Chris eligible for the principal residence exemption on Red Acre, the adjoining or contiguous property?**



Yes. Chris is eligible for the principal residence exemption on Red Acre and Blue Acre since Chris' home sits on both parcels and Chris owns and occupies Red Acre and Blue Acre as his principal residence.

**UNOCCUPIED REQUIREMENT**

**119.  Is an adjoining or contiguous property required to be vacant to qualify for the principal residence exemption?**

No. The Michigan Court of Appeals in *Eldenbrady v City of Albion, 294 Mich App 251, 816 NW2d 449 (2012)*, determined that in order to qualify for a principal residence exemption on an adjoining or contiguous property, it need only be unoccupied and not vacant. Specially, the word vacant does not appear in the text of MCL 211.7dd(c).

**120.  What is the difference between "vacant" and "unoccupied" property?**

The Michigan Court of Appeals in *Eldenbrady v City of Albion, 294 Mich App 251, 816 NW2d 449 (2012)*, defined vacant property to mean completely empty. While the Court defined "unoccupied" to mean "without human occupants." The Court noted that an occupant is a tenant or resident.

As such, to be considered unoccupied and qualify for the principal residence exemption, it does not need to be completely empty, but it must be without human occupants such as a tenant or resident. Whether or not a property is unoccupied is determined by the facts of each individual case and the taxpayer has the burden of proof to confirm the property is unoccupied.

**121.  Chris owns Blue Acre which contains Chris' principal residence. Chris also owns Red Acre which is classified residential and it is adjoining or contiguous to Blue Acre. Red Acre contains a dwelling in which Chris' caretaker resides. Is Red Acre considered unoccupied qualifying Chris for the principal residence exemption on Red Acre?**

No. Chris does not qualify for the principal residence exemption on Red Acre since Red Acre is not unoccupied. Red Acre is not unoccupied since it contains a dwelling in which Chris' caretaker resides.

**122.  Chris owns Blue Acre which contains Chris' principal residence. Chris also owns Red Acre which is classified residential and is adjoining or contiguous to Blue Acre. Red Acre contains a garage in which Chris stores his vehicle. Is Red Acre considered unoccupied qualifying Chris for the principal residence exemption on Red Acre?**

Yes**.** Chris does qualify for the principal residence exemption on Red Acre since Red Acre is unoccupied, classified residential and adjoining or contiguous to Blue Acre.

**123.  Chris owns Blue Acre which contains Chris' principal residence. Chris also owns Red Acre which is classified residential and is adjoining or contiguous to Blue Acre. Red Acre contains a**

**dwelling in which no one resides. Is Red Acre considered unoccupied qualifying Chris for the principal residence exemption on Red Acre?**

Yes. Chris does qualify for the principal residence exemption on Red Acre since Red Acre is unoccupied, classified residential and adjoining or contiguous to Blue Acre. While Red Acre contains a dwelling, Red Acre is unoccupied since there are no human occupants residing at the property.

**124. Chris owns Blue Acre which contains Chris' principal residence. Chris also owns Red Acre which is classified residential and is adjoining or contiguous to Blue Acre. Red Acre contains a habitable dwelling in which Chris' children, Jane and Jack, reside. Chris' children do not own Red Acre and do not pay rent. Is Red Acre considered unoccupied qualifying Chris for the principal residence exemption on Red Acre?**

No. Chris does not qualify for the principal residence exemption on Red Acre since Red Acre is not unoccupied. Red Acre is not unoccupied since it contains a habitable dwelling in which Chris' children, Jane and Jack, reside. Since Chris' children, Jane and Jack are not owners, they would also not qualify for the principal residence exemption on Red Acre.

**ADJOINING OR CONTIGUOUS REQUIREMENT**

**125. Chris owns three parcels, Blue Acre, Red Acre and Purple Acre. Blue Acre contains a dwelling and is Chris' principal residence. Red Acre is a vacant parcel, classified residential and is adjoining or contiguous to Blue Acre. Purple Acre is a vacant parcel, classified residential and is adjoining or contiguous to Red Acre. Is Purple Acre considered an adjoining or contiguous parcel qualifying Chris for the principal residence exemption on Purple Acre?**



Yes. Purple Acre is adjoining or contiguous to Red Acre, Chris' principal residence, since it touches and shares a common boundary with Red Acre, qualifying Chris for the principal residence exemption on Purple Acre. Red Acre is considered Chris' principal residence since it is

unoccupied, classified residential, and is adjoining or contiguous to Blue Acre, Chris' principal residence, qualifying Chris for the principal residence exemption on Red Acre.

**126.  Chris owns three parcels, Blue Acre, Red Acre and Purple Acre. Blue Acre contains a dwelling and is Chris' principal residence. Red Acre is a vacant parcel, classified commercial and is adjoining or contiguous to Blue Acre. Purple Acre is a vacant parcel, classified residential and is adjoining or contiguous to Red Acre. Is Purple Acre considered an adjoining or contiguous parcel qualifying Chris for the principal residence exemption on Purple Acre?**



No. Classification of a property can create or break contiguity. Chris does not qualify for the principal residence exemption on Purple Acre since it does not touch and share a common boundary with a parcel that is considered Chris' principal residence. In particular, while Blue Acre is Chris' principal residence, Purple Acre does not touch or share a common boundary with Blue Acre. Also, although Purple Acre and Red Acre do touch and share a common boundary, Red Acre is not considered Chris' principal residence since Red Acre is classified commercial, disqualifying Chris for a principal residence exemption on Red Acre and Purple Acre. As such, Red Acre's commercial classification broke the contiguity making Purple Acre ineligible for the PRE.

**127.  Chris owns two parcels, Blue Acre and Red Acre. Blue Acre contains a dwelling and is Chris' principal residence. Blue Acre is located in Delta Township, Michigan. Chris also owns Red Acre that is a vacant parcel, classified residential and is adjoining or contiguous to Blue Acre. Red Acre is located in the City of Lansing, Michigan. Is Red Acre considered an adjoining or contiguous parcel qualifying Chris for the principal residence exemption on Red Acre?**



Yes. Contiguity is not broken by boundary lines between local tax collecting units. As such, Chris qualifies for the principal residence exemption on Red Acre since Red Acre is unoccupied, classified residential and is adjoining or contiguous to Blue Acre, Chris' principal residence.

**128. Chris owns two parcels, Blue Acre and Red Acre. Blue Acre contains a dwelling and is Chris' principal residence. Chris also owns Red Acre which is a vacant parcel and classified residential. Separating Blue Acre and Red Acre is St. Joseph Road. Is Red Acre considered an adjoining or contiguous parcel qualifying Chris for the principal residence exemption on Red Acre?**



Yes. Contiguity is not broken by a road or a right-of-way. As such, Chris qualifies for the principal residence exemption on Red Acre since Red Acre is unoccupied, classified residential and is adjoining or contiguous to Blue Acre, Chris' principal residence.

**129. Chris owns two parcels, Blue Acre and Purple Acre. Blue Acre contains a dwelling and is Chris' principal residence. Chris also owns Purple Acre which is a vacant parcel and classified residential. Separating Blue Acre and Purple Acre is Red Acre which is owned by the City of Cadillac. To access Purple Acre, the City of Cadillac grants Chris a road access easement. Because Chris was granted a road access easement, is Purple Acre considered an adjoining or contiguous parcel qualifying Chris for the principal residence exemption on Purple Acre?**



No. A road easement does not create contiguity. The road access easement only allows a person the right to travel across another person's land to get to another location. As such, Chris does not qualify for the principal residence exemption on Purple Acre since it does not touch and share a common boundary with a parcel that is considered Chris' principal residence. In particular, while Blue Acre is Chris' principal residence, Purple Acre does not touch or share a common boundary with Blue Acre. In addition, Red Acre is not Chris' principal residence since he does not own Red Acre.

**130.  Chris owns and occupies a home as his principal residence on a lake. Chris also owns an island on the lake which is vacant and classified residential. The island sits directly across from Chris' principal residence. Does Chris qualify for the principal residence exemption on the island parcel?**



Chris could only qualify for the principal residence exemption if he owns a portion of bottomlands and the property lines from Chris's home parcel touches the property lines of the island parcel. The bottomland is the land located under the water. In general, an owner on a great lake (Michigan, Huron, Superior and Erie), owns only to the water's edge. Whereas an owner on an inland lake in Michigan owns a pie-shaped portion of the bottomlands to the

center of the lake. Since not all lakes are perfectly circular, the property lines may not converge at the exact middle point of the lake.

**131.  Chris owns a condominium unit along with a boat slip and garage, which have separate property identification numbers. Can Chris claim the principal residence exemption for the boat slip and garage?**

Yes. An owner of a condominium is also considered a partial owner of all the common areas. As such, the boat slip and garage are considered to be adjoining or contiguous to the owner's principal residence. The boat slip and garage would qualify for the principal residence exemption so long as the boat slip and garage parcels are unoccupied and classified residential or timber-cutover.

## PARTIAL PRINCIPAL RESIDENCE EXEMPTIONS NOT PERMITTED

**132.  Chris owns two parcels, Blue Acre and Red Acre. Blue Acre contains a dwelling and is Chris' principal residence. Chris also owns Red Acre which is classified residential and is adjoining or contiguous to Blue Acre. Red Acre contains a dwelling where Chris' caretaker resides. Chris claimed an 85% principal residence exemption representing the value of the unoccupied portion of Red Acre, with the 15% "non-exempt" portion representing the value of the dwelling occupied by the caretaker. Is Chris eligible for the 85% principal residence exemption on Red Acre since the 85% being claimed is for the value of the unoccupied portion of Red Acre?**



No. Chris is eligible for a 0% principal residence exemption on Red Acre. MCL 211.7dd(c) does not provide for a partial exemption on adjoining or contiguous property. If an owner meets all the requirements except one (e.g., property was classified commercial), the owner is not eligible to claim any principal residence exemption on the adjoining or contiguous property. Since the property was occupied, Chris is entitled to a 0% principal residence exemption. See *Hardenbergh v County of Manistee, unpublished opinion per curiam of the Court of Appeals, issued November 24, 2015 (Docket No. 322605).*

# CHAPTER 7: PARTIAL EXEMPTIONS

Although an owner may occupy a property as his or her principal residence, he or she may not be eligible to claim a 100% principal residence exemption, in certain circumstances.

## DUPLEXES & APARTMENTS

**133.  Chris owns Blue Acre which consists of a two-unit duplex. If Chris lives in one unit but the other unit is vacant, is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. A principal residence includes only that portion of a dwelling or unit in a multiple-unit dwelling that is subject to ad valorem taxes and that is owned and occupied by an owner of the dwelling or unit. Chris can only occupy one of the units as a principal residence. As a result, Chris' claim for the principal residence exemption would need to be reduced by the portion of the taxable value of the unit not occupied by Chris. MCL 211.7dd(c).

**134.    Chris owns Blue Acre which consists of a two-unit duplex. If Chris lives in one unit and uses the other unit for storage, is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. A principal residence includes only that portion of a dwelling or unit in a multiple-unit dwelling that is subject to ad valorem taxes and that is owned and occupied by an owner of the dwelling or unit. Chris can only occupy one of the units as a principal residence. As a result, Chris' claim for the principal residence exemption would need to be reduced by the portion of the taxable value of the unit not occupied by Chris. MCL 211.7dd(c).

**135.    Chris owns Blue Acre which consists of a two-unit duplex. Chris lives in one unit and grandpa lives in the other unit. Grandpa is not an owner. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. A principal residence includes only that portion of a dwelling or unit in a multiple-unit dwelling that is subject to ad valorem taxes and that is owned and occupied by an owner of the dwelling or unit. Chris can only occupy one of the units as a principal residence. As a result, Chris' claim for the principal residence exemption would need to be reduced by the portion of the taxable value of the unit not occupied by Chris. MCL 211.7dd(c).

**136.  Chris and Sarah own a two-unit duplex. Chris lives in one unit and Sarah lives in the other. Chris and Sarah are single. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. A principal residence includes only that portion of a dwelling or unit in a multiple-unit dwelling that is subject to ad valorem taxes and that is owned and occupied by an owner of the dwelling or unit. Chris can only occupy one of the units as a principal residence. As a result, Chris' claim for the principal residence exemption would need to be reduced by the portion of the taxable value of the unit not occupied by Chris. Sarah may also claim a principal residence exemption for that portion of the taxable value of the unit occupied as her principal residence. Chris and Sarah's individual claims may total a 100% principal residence exemption. MCL 211.7dd(c).

**137. Chris owns Blue Acre which consists of a two-unit duplex. Chris decided to connect the two units through a common wall and doorway. Chris occupies both units as his principal residence. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

Yes. Since the common wall and doorway connect both units, the property is now considered one unit. Since Chris is occupying both units as one residence, he may claim a 100% PRE.

**BED AND BREAKFASTS**

**138. What are the requirements to be eligible as a "Bed and Breakfast"?**

In order to qualify as a "Bed and Breakfast" MCL 211.7cc(30)(a) requires that: (1) the property must be classified as residential property; (2) the property must have 10 or fewer sleeping rooms (including the sleeping room occupied by the owner of the property); (3) one or more of the rooms must be available for rent to transient tenants; (4) meals must be served at no extra cost to its transient tenants; (5) the property must have a smoke detector in proper working order in each sleeping room; and (6) the property must have a fire extinguisher in proper working order on each floor.

**139. Chris owns Blue Acre which consists of a dwelling that he uses as his principal residence and as a bed and breakfast. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. The owner is entitled to a portion of the principal residence exemption based upon the square footage of the property used exclusively as that owner's principal residence ***and*** 50% of the square footage of the property's common areas. MCL 211.7cc(30)(b).

**140. What are "Common Areas"?**

Common areas of bed and breakfasts include, but are not limited to, kitchen, dining room, living room, fitness room, porch, hallway, laundry room, or bathroom that are available for use by guests.

**141.  Chris owns Blue Acre which consists of a dwelling that he uses as his principal residence and as a bed and breakfast. Blue Acre is a total of 5,000 square feet. The area Chris uses exclusively as his principal residence is 2,000 square feet. The kitchen, living room, dining room and fitness room make up 1,000 square feet. The bedrooms for guests are the remaining 2,000 square feet. What percentage principal residence exemption is Chris eligible to claim Blue Acre?**

The square feet used exclusively as the principal residence of the owner is 2,000 square feet. The portion used both by guests and the owner is 1,000 square feet, so Chris can claim 50% or 500 square feet for that portion. Therefore, Chris can claim a 50% principal residence exemption (i.e., 2,000 + (50% of 1,000 or 500) = 2,500; 2,500/5,000 total = 50%)

## OPERATING A BUSINESS

**142.  Chris owns Blue Acre which consists of a commercial building. The lower level of the building is used as Chris' Auto Repair. The upper level consists of an apartment that Chris resides in as his principal residence. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. If a portion of a parcel is used for a purpose other than as a principal residence, the owner shall claim an exemption for only that portion of the taxable value of the property used as the principal residence of that owner. Since part of the property is used for commercial purposes, Chris would only be eligible for that portion of the taxable value of the property used as the principal residence of that owner. MCL 211.7cc(16).

**143.  Chris owns Blue Acre. Chris resides at Blue Acre as his principal residence and operates a daycare in his home. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. If a portion of a parcel is used for a purpose other than as a principal residence, the owner shall claim an exemption for only that portion of the taxable value of the property used as the principal residence of that owner. Since part of the property is used for commercial purposes, Chris would only be eligible for that portion of the taxable value of the property used as the principal residence of that owner. MCL 211.7cc(16).

## TWO DWELLINGS ON ONE PARCEL

**144.  Chris owns Blue Acre. There are two dwellings on Blue Acre, known as Home A and Home B. Chris resides in Home A as his principal residence. Chris uses Home B for storage purposes. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. A principal residence means the one place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established. Chris is only able to reside at one home as a principal residence. The principal residence exemption would need to be reduced by the portion of the taxable value of the unoccupied Home B. MCL 211.7dd(c).

Therefore, if Home B has a taxable value of $10,000 and the total taxable value of the parcel is $100,000, Chris is eligible to claim a 90% principal residence exemption (i.e., Taxable Value of the Total Minus Taxable Value of the unoccupied home divided by the Taxable Value of the Total)

**145.  Chris owns Blue Acre. There are two dwellings on Blue Acre, known as Home A and Home B. Chris resides in Home A as his principal residence. Grandpa, a non-owner, resides in Home B as his principal residence. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. A principal residence means the one place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established. Chris is only able to reside at one home as a principal residence. The principal residence exemption would need to be reduced by the portion of the taxable value of Home B that is occupied by Grandpa. MCL 211.7dd(c).

**146.  Chris and Sarah own Blue Acre. There are two dwellings on Blue Acre, known as Home A and Home B. Chris resides in Home A as his principal residence. Sarah resides in Home B as her principal residence. Chris and Sarah are single. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. A principal residence means the one place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established. Chris is only able to reside at one home as a principal residence. Chris may claim a partial principal residence exemption based on the value of the land plus the taxable value of Home A. Sarah may also claim a principal residence exemption for that portion of the taxable value of House B (her principal residence) plus the land. Chris and Sarah's individual claims may total a 100% PRE.

**147. Chris owns Blue Acre. There are two homes on Blue Acre, known as Home A and Home B. Chris resides in Home A as his principal residence. Home B is dilapidated and vacant. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

The burden of proof is on the taxpayer to prove he occupied the property as his principal residence. "Occupancy" is not defined by statute. Michigan Courts define occupancy to mean, "to reside in as an owner." In turn, "reside" is defined as "to dwell permanently or continuously." Michigan Courts further held that "to be entitled to the exemption, an owner claiming the exemption has a continuing requirement to "*use* the property as his or her principal residence." As such, it is clear that a person must dwell either permanently or continuously at a property and use the property as his or principal residence to "occupy" the property. Whether or not a person occupied a property as his or her fixed and permanent home is looked at on a case-by-case basis. In most cases, a person using a property for investment purposes would not be entitled to a principal residence exemption since they are no longer residing in the subject property and using it as their fixed permanent home.

## DWELLING OR UNIT THAT IS RENTED OR LEASED

**148. Chris owns Blue Acre which is located in a resort/lake area. Chris rents the entire property out for the majority of the year and lives in a condominium that he owns while the property is rented. Is Chris eligible to claim a 100% principal residence exemption, a reduced exemption, or no exemption on Blue Acre?**

The burden of proof is on the taxpayer to prove he occupied the property as his principal residence. "Occupancy" is not defined by statute. Michigan Courts define occupancy to mean, "to reside in as an owner." In turn, "reside" is defined as "to dwell permanently or continuously." Michigan Courts further held that "to be entitled to the exemption, an owner claiming the exemption has a continuing requirement to "use the property as his or her principal residence." As such, it is clear that a person must dwell either permanently or continuously at a property and use the property as his or principal residence to "occupy" the property. Since Chris used the condominium the majority of the time during the year as his principal residence, and used Blue Acre as an investment property, Chris is not entitled to the exemption on Blue Acre.

Whether or not a person occupied a property as his or her fixed and permanent home is looked at on a case-by-case basis. It is important to note that in most cases, a claimant using a property for investment purposes would not be entitled to a principal residence exemption if the claimant no longer resides in the subject property and uses it as their fixed permanent home. To review the steps to determine occupancy, see questions 45 through 47. *Rentschler v Melrose Twp, 322 Mich App 113; 910 N.W.2d 711 (2017).*

**149. Chris owns Blue Acre. There is only one home on Blue Acre. Chris occupies the property as his principal residence. Non-owner, Donald, also resides at the property and pays Chris rent as a tenant. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**

No. A principal residence also includes any portion of a dwelling or unit of an owner that is rented or leased to another person as a residence as long as that portion of the dwelling or unit that is rented or leased is less than 50% of the total square footage of living space in that dwelling or unit. Chris may be eligible for a 100% principal residence exemption if Donald, the non-owner tenant, leased less than 50% of the total square footage of living space in Chris' dwelling. It is reasonable to assume the non-owner tenant occupied and leased 50% of the property since he or she would have equal use of the property. Therefore, in most cases, an owner would only be eligible for a 50% principal residence exemption in these situations. MCL 211.7dd(c)

# CHAPTER 8: OWNER'S CONDITIONAL RESCISSION

A conditional rescission is the process which allows an owner to receive a principal residence exemption on his or her current principal residence and retain a principal residence exemption on that owner's previously exempt property simultaneously, for up to three years, if he or she meets the statutory eligibility requirements listed in MCL 211.7cc(5).

MCL 211.7cc(5) states in relevant part:

> If an owner is eligible for and claims an exemption for that owner's current principal residence, that owner may retain an exemption for not more than 3 tax years on property previously exempt as his or her principal residence if that property is not occupied, is for sale, is not leased, and is not used for any business or commercial purpose by filing a conditional rescission form prescribed by the department of treasury with the local tax collecting unit within the time period prescribed in subsection (2)…An owner who files a conditional rescission form shall annually verify to the assessor of the local tax collecting unit on or before December 31st that the property for which the principal residence exemption (PRE) is retained is not occupied, is for sale, is not leased and is not used for any business or commercial purpose…If the owner…does not annually verify by December 31st, the assessor of the local tax collecting unit shall deny the principal residence exemption on that property…[I]f property subject to a conditional rescission is leased, the local tax collecting unit shall deny that conditional rescission and that denial is retroactive and is effective on December 31st of the year immediately preceding the year in which the property subject to the conditional rescission is leased.

As a result, to be eligible for a conditional rescission, MCL 211.7cc(5) requires the following conditions be met: (1) the property was previously exempt as that owner's principal residence; (2) the property is for sale; (3) the property is not occupied; (4) the property is not leased; (5) the property is not used for business or commercial purposes; (6) the owner established a new principal residence in Michigan; and (7) the owner timely filed the initial and annual verification(s) using the Conditional Rescission of Principal Residence Exemption (Form 4640).

## PREVIOUSLY EXEMPT PROPERTY REQUIREMENT

**150.  Chris' principal residence has been Blue Acre since 1990. In the 2021 tax year, Chris died. Chris' son, Bob, inherits Blue Acre but does not reside at Blue Acre or claim the principal residence exemption on Blue Acre. Bob places Blue Acre for sale. Blue Acre is not occupied,**

leased, or used for business or commercial purposes. **Is Bob eligible for the conditional rescission on Blue Acre?**

No. An owner can only claim a conditional rescission on the property that he or she previously owned and occupied as his or her principal residence and he or she claimed and received a principal residence exemption. Bob is not eligible to claim the conditional rescission on Blue Acre and retain the principal residence exemption since he never claimed the principal residence exemption on Blue Acre. As a result, Blue Acre was not "previously exempt" as Bob's principal residence.

**151.  Does an unoccupied parcel that was contiguous to the previous principal residence and thus was receiving a principal residence exemption, qualify for a conditional rescission?**

Yes. As the statute states, the "…owner may **retain** an exemption…on property **previously exempt** as his or her principal residence…" (emphasis added). As a result, an owner is eligible to claim the conditional rescission on a contiguous parcel so long as that owner claimed, received and met the eligibility requirements for the principal residence exemption on the contiguous parcel. Furthermore, the contiguous parcel must not be occupied, must be for sale, must not be leased, and must not be used for any business or commercial purpose. Also, the owner is required to timely file the initial and annual verification using the Conditional Rescission of Principal Residence Exemption (Form 4640).

**FOR SALE REQUIREMENT**

**152.  Does the statute require the property to be listed with a real estate agent to establish a property is "For Sale" and eligible for a conditional rescission?**

No. The statute does not require the property to be listed with a real estate agent to constitute "For Sale" to be eligible for a conditional rescission. Whether or not a property is considered "For Sale" is determined by the totality of circumstances. For example, a "For Sale" by owner sign in the window or lawn may be sufficient so long as the asking sales price is reasonable to the value of the house and the owner is taking active steps to show a true intent to sell.

**153.  If a property is available for lease but is not for sale, does it qualify for a conditional rescission?**

No. The property must be for sale. It may also be available for lease, but once the property is leased, it does not qualify. If a property is receiving a principal residence exemption under a conditional rescission, the local tax collecting unit shall deny the conditional rescission effective on December 31st of the year immediately preceding the year in which the property is leased.

For example, if a person is receiving a principal residence exemption in 2021 under a conditional rescission and then leases the property in September 2021, the conditional rescission shall be denied in 2021, resulting in the exemption being removed for the 2021 tax year.

## NOT OCCUPIED REQUIREMENT

**154.  What does "Not Occupied" mean?**

The Michigan Court of Appeals in *Eldenbrady v City of Albion, 294 Mich App 251, 816 NW2d 449 (2012)*, defined not occupied to mean "without human occupants." The Court noted that an occupant is a tenant or resident.

As such, to be considered not occupied and qualify for the conditional rescission, it does not need to be completely empty, but it must be without human occupants such as a tenant or resident. Whether or not a property is unoccupied is determined by the facts of each individual case and the taxpayer has the burden of proof to confirm the property is unoccupied.

## NOT LEASED REQUIREMENT

**155.  Chris' principal residence is Blue Acre. On May 1, 2021, Chris purchased and claimed a new principal residence exemption on Red Acre. Chris filed a timely conditional rescission on Blue Acre for the 2021 tax year. When Chris filed the conditional rescission, Blue Acre was for sale, not leased and not used for business or commercial purposes. Subsequently, on December 28, 2021, Chris leased Blue Acre. Is Chris eligible for the conditional rescission for the 2021 tax year on Blue Acre?**

No**.** If property subject to a conditional rescission is leased, the Assessor shall deny that conditional rescission and that denial is retroactive and is effective on December 31st of the year immediately preceding the year in which the property subject to the conditional rescission is leased. Chris is not eligible for the conditional rescission in 2021 since he leased Blue Acre in 2021.

## NOT USED FOR BUSINESS OR COMMERCIAL PURPOSES REQUIREMENT

**156.  Chris' principal residence is Blue Acre. Chris only claimed an 80% principal residence exemption since 20% of the property was used for business and commercial purposes. In 2020, Chris purchases Purple Acre and occupies and claims Purple Acre as his principal residence. Chris filed a timely conditional rescission on Blue Acre for the 2021 tax year since the property was his previously exempt property, it is for sale, and is not leased. In addition, Chris no longer uses 20% of Blue Acre for business or commercial purposes. Is Chris eligible**

**for the conditional rescission in 2021? If yes, is Chris eligible to retain an 80% or 100% principal residence exemption based on the conditional rescission?**

Subsection (5) of MCL 211.7cc states that the "owner may **retain** an exemption for not more than three tax years on property **previously exempt** as his or her principal residence…" (emphasis added). Since Chris only claimed an 80% principal residence exemption, he can only retain an 80% exemption, so long as the 80% principal residence exemption met all the other requirements for the conditional rescission.

**157. Chris' principal residence is Blue Acre. Chris used 20% of Blue Acre for business and commercial purposes. As a result, Chris claimed an 80% principal residence exemption on Blue Acre. On May 1, 2021, Chris purchased and claimed a new principal residence exemption on Red Acre. Chris filed a timely conditional rescission on Blue Acre for the 2021 tax year since the property was his previously exempt property and it is for sale, and not leased. However, Chris continued to use 20% of Blue Acre for business or commercial purposes. Is Chris eligible to retain the 80% principal residence exemption on Blue Acre under the conditional rescission?**

No. MCL 211.7cc(5) specifically states that a person may not retain any exemption if the property is used for business or commercial purposes. Since Chris continued to use 20% of the property for business or commercial use, he is not eligible to retain the 80% principal residence exemption. Chris is not eligible to retain any principal residence exemption on Blue Acre. As a result, the parcel should receive a 0% principal residence exemption.

**ESTABLISHED A NEW PRINCIPAL RESIDENCE REQUIREMENT**

**158. How does a person establish a new principal residence?**

To establish a new principal residence, that person must own and occupy the new residence as his principal residence and claim a principal residence exemption on that new residence in Michigan.

*See Chapters 2 through 5 to learn more about the eligibly requirements for a principal residence exemption in Michigan.*

**159. Chris' principal residence is Blue Acre. On May 1, 2021, Chris purchased and claimed a new homestead exemption on Red Acre which is located in Florida. On May 1, 2021, Chris timely filed a conditional rescission for the 2021 tax year. Blue Acre was for sale, not occupied, not leased and not used for business or commercial purposes. Is Chris eligible for the conditional rescission for the 2021 tax year on Blue Acre?**

No. To establish a new principal residence, that person must own and occupy the residence as his principal residence and claim a principal residence exemption on that new residence in Michigan. A person is not eligible for the conditional rescission if he or she establishes a new principal residence exemption in any other state.

**160.  Chris' principal residence is Blue Acre. On May 1, 2021, Chris moved into an assisted living facility/nursing home. On May 1, 2021, Chris timely filed a conditional rescission for the 2021 tax year. Blue Acre was for sale, not occupied, not leased and not used for business or commercial purposes. Is Chris eligible for the conditional rescission for the 2021 tax year on Blue Acre?**

No. To establish a new principal residence exemption, that person must own and occupy the residence as his principal residence and claim a principal residence exemption on that new residence in Michigan. An owner who moves to an assisted living facility/nursing home is not eligible for a conditional rescission because a new principal residence has not been established that qualifies for a principal residence exemption. While Chris does not qualify for the conditional rescission, Chris may retain the principal residence exemption while in an assisted living facility/nursing home if he meets the eligibility requirements to retain the principal residence.

*See **Chapter 3** to learn more about the eligibility requirements to retain a principal residence exemption while in an assisted living facility/nursing home.*

**161.  Chris' principal residence is Blue Acre. On May 1, 2021, Chris leased and moved into an apartment. On May 1, 2021, Chris timely filed a conditional rescission for the 2021 tax year. Blue Acre was for sale, not occupied, not leased and not used for business or commercial purposes. Is Chris eligible for the conditional rescission for the 2021 tax year on Blue Acre?**

No. To establish a new principal residence exemption, that person must own and occupy the residence as his principal residence and claim a principal residence exemption on that new residence in Michigan. An owner who moves to an apartment that he or she rents is not eligible for a conditional rescission because a new principal residence has not been established that qualifies for a principal residence exemption.

**162.  Chris' principal residence is Blue Acre. Sarah's principal residence is Red Acre. In 2016, Chris and Sarah got married. Chris moved in with Sarah at Red Acre. In 2021, Chris filed a timely conditional rescission on Blue Acre since the property was his previously exempt property and it is for sale, not leased, not occupied, and not used for business or commercial purposes. Is Chris eligible for the conditional rescission for the 2021 tax year on Blue Acre?**

No. To establish a new principal residence exemption, that person must own and occupy the residence as his principal residence and claim a principal residence exemption on that new residence in Michigan. Chris does not qualify for the conditional rescission exemption for the 2021 tax year because he did not own and claim a new principal residence exemption on a new principal residence in Michigan as required by MCL 211.7cc.

In order for Chris to qualify in this situation, Sarah would have to deed Chris an ownership interest in Red Acre and Chris would have to claim the principal residence exemption on Red Acre by filing the Principal Residence Exemption Affidavit (Form 2368).

**163.  Chris' principal residence has been Blue Acre since 1990. In the 2020 tax year, Chris died. Chris' son, Bob, places Blue Acre for sale. Blue Acre is not occupied, leased or used for business or commercial purposes. Is Chris' estate eligible for the conditional rescission for the 2021 tax year on Blue Acre?**

No. In order to qualify, the owner of the property must be eligible for and claim an exemption for his or her current principal residence and have occupied the previously exempt property as his or her principal residence. A deceased person cannot be eligible for and claim an exemption on a current principal residence.

**<u>FILING REQUIREMENT</u>**

**164.  How does a person claim a conditional rescission?**

To claim a conditional rescission, the person who meets all the eligibility requirements for the conditional rescission must complete and file a Conditional Rescission of Principal Residence Exemption (Form 4640) with the Assessor. To meet all the eligibility requirements MCL 211.7cc(5) requires the following conditions be met: (1) the property was previously exempt as that owner's principal residence; (2) the property is for sale; (3) the property is not occupied; (4) the property is not leased; (5) the property is not used for business or commercial purposes; (6) the owner established a new principal residence in Michigan; and (7) the owner timely filed the initial and annual verification(s) using the Conditional Rescission of Principal Residence Exemption (Form 4640).

**165.  Do the Request to Rescind Principal Residence Exemption (Form 2602) and the Conditional Rescission of Principal Residence Exemption (Form 4640) both need to be filed?**

No. If the conditional rescission requirements are met, the Conditional Rescission of Principal Residence Exemption (Form 4640) would take the place of the Request to Rescind Principal Residence Exemption (Form 2602). Filing the Form 2602 removes the claim for a principal

residence exemption. An owner who no longer meets the eligibility requirements of the principal residence exemption is required to file a rescission within 90 days of the change in eligibility.

*See **Chapter 5** to learn more about rescinding a principal residence exemption and the Request to Rescind Principal Residence Exemption (Form 2602).*

## 166. Where can a person obtain a Conditional Rescission of Principal Residence Exemption (Form 4640)?

A Conditional Rescission of Principal Residence Exemption (Form 4640) can be obtained from your closing statement preparer or from the Assessor. A person can also obtain the form online at www.michigan.gov/PRE.

*Closing statement preparers are required to provide the Conditional Rescission of Principal Residence Exemption (Form 4640) and other principal residence exemption related forms at closing. However, failure to provide the Conditional Rescission of Principal Residence Exemption (Form 4640), or any other principal residence exemption related form, does not create a cause of action at law or in equity against the closing statement preparer.*

## 167. Is there a deadline for filing a Conditional Rescission of Principal Residence Exemption (Form 4640)?

Yes. To initially claim the conditional rescission, the owner must file a Conditional Rescission of Principal Residence Exemption (Form 4640) with the Assessor on or before June 1 (for the summer tax levy), or on or before November 1 (for the winter tax levy). In addition, the owner must annually file the Conditional Rescission of Principal Residence Exemption (Form 4640) on or before December 31st to verify the owner's eligibility for the conditional rescission for each subsequent year. For example, if an owner initially claimed a conditional rescission in 2020, he or she would have to submit another completed Form 4640 by December 31, 2020 to qualify for a conditional rescission in 2021.

## 168. How long is a conditional rescission effective?

An owner who meets the eligibility requirements for the conditional rescission and timely files the initial and annual Conditional Rescission of Principal Residence Exemption (Form 4640) may retain the principal residence exemption on his or her previously exempt principal residence for up to three years. The three years must be consecutive (e.g., 2020, 2021, and 2022). For example, if an owner initially claimed a conditional rescission in 2020, he or she would have to submit another completed Form 4640 by December 31, 2020 to qualify for a conditional

rescission in 2021, and another completed Form 4640 by December 31, 2021 to qualify for a conditional rescission in 2022.

**169. If an owner missed the initial or annual verification filing deadlines, may that owner still claim and receive the conditional rescission?**

No. If an owner missed a filing deadline to claim the conditional rescission, that owner will not be eligible for a conditional rescission. MCL 211.7cc(5) requires that untimely claims for a conditional rescission be denied.

**170. Does the Board of Review have the authority to grant a conditional rescission if a filing deadline is missed?**

No. The Board of Review has no authority over conditional rescissions and cannot institute a conditional rescission on behalf of an owner if a deadline is missed or for previous tax years.

*See the Board of Review website and associated resources to learn more about the Board of Review.*

**171. Chris timely filed for a conditional rescission and met all the requirements to receive a conditional rescission on Blue Acre for the 2019 tax year. Chris forgot to file a conditional rescission on Blue Acre for the 2020 tax year. Subsequently, Chris petitioned the 2021 July Board of Review and it granted the conditional rescission on Blue Acre for the 2020 tax year since the property was for sale, not occupied, not leased, and not used for business purposes. Chris timely filed a conditional rescission on Blue Acre and met all the requirements to receive a conditional rescission on Blue Acre for the 2021 tax year. Is Chris eligible for the conditional rescission in 2019, 2020, and 2021 on Blue Acre?**

Chris is only eligible for the 2019 tax year. Chris is eligible for the conditional rescission in 2019 on Blue Acre since Chris met all the conditions to qualify including timely filing the conditional rescission. Chris is not eligible for the conditional rescission on Blue Acre in 2020 since Chris did not timely file his conditional rescission for the 2020 tax year and the Board of Review had no authority to grant the untimely conditional rescission for2020. Since Chris was not eligible for the conditional rescission on Blue Acre in 2020, Chris also does not qualify for the conditional rescission on Blue Acre in 2021.

The 3 years must be consecutive (e.g., 2019, 2020, and 2021). The Assessor is required to deny the principal residence exemption if the owner does not timely file the annual verification using Form 4640. Specifically, MCL 211.7cc(5) states in part, "If the owner… does not annually verify by December 31st, the Assessor of the local tax collecting unit shall deny the principal residence

exemption on that property." Consequently, Chris' failure to comply with the statutory mandates of MCL 211.7cc(5) to claim a conditional rescission results in the ineligibility of the subject parcel to retain the principal residence exemption for the 2020 and 2021 tax years.

**172. If the Request to Rescind Principal Residence Exemption (Form 2602) was filed in early 2019 and the exemption was removed effective for the 2021 tax year, can an owner file the Conditional Rescission of Principal Residence Exemption (Form 4640) and be eligible for the conditional rescission beginning with the 2021 tax year?**

Yes. An owner can file the Conditional Rescission of Principal Residence Exemption (Form 4640) and be eligible for the conditional rescission for the 2021 tax year. However, the property must not be occupied, must be for sale, must not be leased and must not be used for any business or commercial purpose. In addition, the owner must timely file the initial and annual verification Conditional Rescission of Principal Residence Exemption (Form 4640). Specifically, MCL 211.7cc(5) states in part, "An owner…shall annually verify to the assessor of the local tax collecting unit on or before December 31 that the property for which the principal residence exemption is retained is not occupied…is for sale, is not leased except as otherwise provided in this section, and is not used for any business or commercial purpose."

## CHAPTER 9: FORECLOSURE ENTITY CONDITIONAL RESCISSION

A foreclosure entity conditional rescission is the process that allows a land contract vendor, bank, credit union or other lending institution (foreclosure entity) to retain a principal residence exemption on foreclosed property for up to 3 years if the statutory eligibility requirements listed in MCL 211.7cc(5) are met.

MCL 211.7cc(5) states in relevant part:

> [I]f a land contract vendor, bank, credit union, or other lending institution owns property as a result of a foreclosure or forfeiture of a recorded instrument…or through deed or conveyance in lieu of a foreclosure or forfeiture on that property and that property had been exempt under this section immediately preceding the foreclosure, that land contract vendor, bank, credit union, or other lending institution may retain an exemption on that property at the same percentage of exemption that the property previously had…if that property is not occupied other than by the person who claimed the exemption under this section immediately preceding the foreclosure or forfeiture, is for sale, is not leased to any person other than the person who claimed the exemption under this section immediately preceding the foreclosure, and is not used for any business or commercial purpose. A land contract vendor, bank, credit union, or other lending institution may claim an exemption under this subsection by filing a conditional rescission form prescribed by the department of treasury with the local tax collecting unit within the time period prescribed in subsection (2)…[A] land contract vendor, bank, credit union, or other lending institution that files a conditional rescission form shall annually verify to the assessor of the local tax collecting unit on or before December 31st…The land contract vendor, bank, credit union, or other lending institution may retain the exemption authorized under this section for not more than 3 tax years. If a land contract vendor, bank, credit union, or other lending institution does not annually verify by December 31st…the assessor of the local tax collecting unit shall deny the principal residence exemption on that property…The land contract vendor, bank, credit union, or other lending institution shall pay an amount equal to the additional amount that land contract vendor, bank, credit union, or other lending institution would have paid…if an exemption had not been retained on that property, together with an administration fee…If a land contract vendor, bank, credit union, or other lending institution fails to make the payment required…the local tax collecting unit shall deny that conditional rescission and that denial is retroactive and is effective on December 31st of the immediately preceding year.

As a result, to qualify for a foreclosure conditional rescission, MCL 211.7cc(5) requires the following conditions be met:(1) the foreclosure entity must be a land contract vendor, bank, credit union, or other lending institution; (2) the foreclosure entity must own the property as a result of a foreclosure or forfeiture, or through deed or conveyance in lieu of a foreclosure or forfeiture; (3) the property must have been subject to a principal residence exemption immediately preceding the foreclosure or forfeiture; (4) the property cannot be occupied; (5) the property must be for sale; (6) the property cannot be leased to any person other than the person who claimed the principal residence exemption immediately preceding the foreclosure or forfeiture; (7) the property must not be used for any business or commercial purpose; (8) the foreclosure entity must pay to the tax collecting unit an amount equal to the amount of taxes that the foreclosure entity would have paid if the property were not subject to a principal residence exemption and must pay an administration fee equal to the property tax administration fee imposed under Section 44 of the General Property Tax Act; and (9) the foreclosure entity must timely file the initial and annual verification Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983).

## FORECLOSURE ENTITY VERSUS OWNER'S CONDITIONAL RESCISSION

### 173.  What are the statutory eligibility requirement differences between a foreclosure entity conditional rescission and an owner's conditional rescission?

The foreclosure entity must meet the following requirements to retain a principal residence exemption.

- The foreclosure entity does not have to own, occupy and/or claim a principal residence exemption on the property being foreclosed;
- The foreclosure entity does not have to establish a new principal residence in Michigan.
- The foreclosure entity can lease the property so long as it is leased to the owner being foreclosed.
- The form to claim the conditional rescission is different. The foreclosure entity must file the Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983).
- The foreclosure entity must pay to the local tax collecting unit an amount of taxes that the foreclosure entity would have paid if the property were not subject to a principal residence exemption.

*The foreclosure entity must pay an administration fee equal to the property tax administration fee imposed under Section 44 of the General Property Tax Act. The administration fee is to be*

*retained by the local tax collecting unit. See Chapter 8 to learn more about an Owner's Conditional Rescission.*

## PAYMENT OF TAXES AND ADMINISTRATION FEE REQUIREMENT

**174.  Does the foreclosure entity have to pay any taxes in order to retain the principal residence exemption on the property?**

Yes. The foreclosure entity must pay to the local tax collecting unit an amount that the foreclosure entity would have paid if the property were not subject to a principal residence exemption (collected at the same time and in the same manner).

**175.  Does the foreclosure entity have to pay an administration fee to retain the principal residence exemption on the property?**

Yes. The foreclosure entity must pay an administration fee equal to the property tax administration fee imposed under Section 44 of the General Property Tax Act. The administration fee is to be retained by the local tax collecting unit.

**176.  Are there any consequences if the foreclosure entity does not pay the taxes and administration fee?**

Yes. If payment is not made, the Assessor is required to deny the foreclosure entity conditional rescission retroactively effective December 31st of the immediately preceding year. If denied, the principal residence exemption is removed and any additional taxes, penalties, and interest must be collected from the foreclosure entity.

## FILING REQUIREMENT

**177.  How does a foreclosure entity claim a foreclosure conditional rescission?**

To claim a foreclosure conditional rescission, the foreclosure entity that meets all the eligibility requirements for the foreclosure conditional rescission must complete and file a Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983), with the Assessor.

**178.  Where can a foreclosure entity obtain a Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983)?**

A Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983) can be obtained from your closing statement preparer or from the Assessor. A person can also obtain the form online at www.michigan.gov/PRE.

**179.  Is there a deadline for filing a Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983)?**

Yes. To initially claim the foreclosure conditional rescission, the foreclosure entity must file a Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983) with the Assessor on or before June 1 (for the summer tax levy), or on or before November 1 (for the winter tax levy). In addition, the foreclosure entity must annually file the Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983) on or before December 31st to verify the foreclosure entity's eligibility for the conditional rescission for each subsequent year. For example, if a foreclosure entity initially claimed a foreclosure conditional rescission in 2021, the foreclosure entity would have to submit another completed Form 4983 by December 31, 2021 to qualify for a foreclosure conditional rescission in 2022.

**180.  How long is a foreclosure conditional rescission effective?**

A foreclosure entity that meets the eligibility requirements for the foreclosure conditional rescission and timely files the initial and annual Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983) may retain the principal residence exemption on the previously exempt principal residence for up to three years. The three years must be consecutive.

**181.  If the foreclosure entity missed the initial or annual verification filing deadlines, may the foreclosure entity still claim and receive the foreclosure conditional rescission?**

No. If a foreclosure entity missed a filing deadline to claim the foreclosure conditional rescission, the foreclosure entity will not be eligible for a foreclosure conditional rescission.

**182.  Does the Board of Review have the authority to grant a conditional rescission if a filing deadline is missed?**

No. The Board of Review has no authority over conditional rescissions and cannot institute a foreclosure conditional rescission on behalf of the foreclosure entity if a deadline is missed or for previous tax years.

*See the Board of Review website and associated resources to learn more about the Board of Review.*

# CHAPTER 10: DENIAL AND APPEAL RIGHTS

A denial of a principal residence exemption is a statutory process by which a claim for a principal residence exemption is rejected as a result of the taxpayer not meeting the eligibility requirements for the principal residence exemption as required under Michigan law. Only the officials (Assessor, County, or Michigan Department of Treasury) indicated in the statute can deny a claim for a principal residence exemption. Specifically, the Assessor and Michigan Department of Treasury may deny a claim for a principal residence exemption. Also, if a County elects to audit principal residence exemptions, the county treasurer or his or her designee or the county equalization director or his or her designee may deny an existing claim for a principal residence exemption. Denials must be issued in the manner proscribed in MCL 211.7cc. Principal Residence Exemption claims may be audited and/or denied by local or county officials or the Michigan Department of Treasury. Depending on who denied the principal residence exemption, an owner may appeal a denial of a claim for a principal residence exemption to the Michigan Tax Tribunal (if denied by local or county officials) or the Michigan Department of Treasury (if denied by the Michigan Department of Treasury).

**A taxpayer appealing a denial should pay close attention to who denied the principal residence exemption. Please refer to the proper section depending on who denied the principal residence exemption:**

- Assessor and County Denials and Appeal Rights

- Michigan Department of Treasury Denials and Appeal Rights

## ASSESSOR AND COUNTY DENIALS AND APPEAL RIGHTS

### 183.  Does the Assessor have the authority to deny a principal residence exemption?

Yes. In accordance with MCL 211.7cc(6), the Assessor may deny a new or existing claim.

### 184.  Does the County have the authority to deny a principal residence exemption?

If a county elects to audit principal residence exemptions in accordance with MCL 211.7cc(11), the county may deny an existing claim for a principal residence exemption.

### 185.  Which years can a principal residence exemption be denied by an Assessor or County?

The Assessor may deny a claim for an exemption for the current year and for the 3 immediately preceding calendar years. If a county elects to audit principal residence exemptions, the county treasurer or his or her designee or the county equalization director or his or her designee may

deny a claim for an exemption for the current year and for the 3 immediately preceding calendar years.

**186. Is there a form that an Assessor and County must use when denying a principal residence exemption?**

Yes. As required by MCL 211.7cc(6) the Assessor must use the Notice of Denial of Principal Residence Exemption (Form 2742). The County must use the Notice of Denial of Principal Residence Exemption (Form 4075). The Assessor and County must complete the form in its entirety and list the reason or reasons for the denial.

**187. Where can an Assessor obtain a Notice of Denial of Principal Residence Exemption (Form 2742) and the County obtain a Notice of Denial of Principal Residence Exemption (Form 4075)?**

The Assessor can obtain the Notice of Denial of Principal Residence Exemption (Form 2742) and the County can obtain Notice of Denial of Principal Residence Exemption (Form 4075) online at www.michigan.gov/PRE. The Assessor and County must use the most current Notice of Denial of Principal Residence Exemption (Form 2742) and Notice of Denial of Principal Residence Exemption (Form 4075).

**188. Who must the Assessor notify of the denial of the principal residence exemption?**

The Assessor must notify the owner of the property and the county treasurer of the denial. Notification to the property owner and county treasurer must include a copy of the Notice of Denial of Principal Residence Exemption (Form 2742). The Assessor will have to forward to the Michigan Department of Treasury a copy of the denial upon request. Please refer to the form for filing instructions.

**189. Who must the County notify of the denial of the principal residence exemption?**

The County must notify the owner of the property, the Assessor, and the Michigan Department of Treasury of the denial. Notification to the property owner, the Assessor, and the Michigan Department of Treasury should include a copy of the Notice of Denial of Principal Residence Exemption (Form 4075). Please refer to the form for filing instructions.

**190. Where can a taxpayer appeal a denial of a principal residence exemption issued by an Assessor or County?**

The denial may be appealed to the residential and small claims division of the Michigan Tax Tribunal (www.michigan.gov/taxtrib) within 35 days after the date of the notice of denial.

**191.  How can a taxpayer initiate an appeal with the Michigan Tax Tribunal?**

An appeal to the Michigan Tax Tribunal can be initiated by the timely filing of a petition form, Petition for Denial of Exemption for Principal Residence/Qualified Agricultural, with the Michigan Tax Tribunal. A $25.00 filing fee may be required. For more information, see www.michigan.gov/taxtrib.

**192.  Where can a taxpayer obtain a petition form to appeal a denial of a principal residence exemption to the Michigan Tax Tribunal?**

The taxpayer can obtain a petition form online at www.michigan.gov/taxtrib. The form, Petition for Denial of Exemption for Principal Residence/Qualified Agricultural, can be printed and mailed to the Michigan Tax Tribunal at PO Box 30232, Lansing, MI 48909. The taxpayer may also complete the form online at www.michigan.gov/taxtrib and submit it electronically, if provided for by the Michigan Tax Tribunal.

**193.  When must a taxpayer appeal the Assessor or County denial of the principal residence exemption to the Michigan Tax Tribunal?**

In accordance with MCL 211.7cc(13), the taxpayer must appeal a denial by the Assessor or County to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision.

**194.  What if a taxpayer does not appeal a denial of a principal residence exemption by the Assessor or the County to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision?**

The Michigan Tax Tribunal may dismiss the appeal as untimely.

**195.  If an Assessor or County issues a denial of a principal residence exemption in error, can the Assessor or County withdraw the denial?**

No. The taxpayer is required to appeal an Assessor's denial of a principal residence exemption to the Michigan Tax Tribunal within 35 days after the date of the notice of denial. Once the taxpayer files a timely appeal, the Assessor or County (whichever denied the exemption) and the taxpayer may file a stipulation with the Michigan Tax Tribunal if they both agree the taxpayer met the statutory requirements to claim and receive the principal residence exemption and the denial was in error. A stipulation form can be found online at www.michigan.gov/taxtrib. The stipulation form is called, Stipulation for Entry of Consent Judgment (Principal Residence Exemption) - Fillable Form. It is suggested the taxpayer contact

the Michigan Tax Tribunal to inquire about their appeal rights/procedures in a situation like this. The Michigan Tax Tribunal can be reached at 517-335-9760.

**196.  Where would a taxpayer appeal a ruling of the Michigan Tax Tribunal?**

If a Proposed Opinion and Judgment is issued by the Michigan Tax Tribunal, the taxpayer may appeal by filing exceptions with the Michigan Tax Tribunal. If a Final Opinion and Judgment is issued by the Michigan Tax Tribunal, the taxpayer may appeal by filing a Motion of Reconsideration with the Michigan Tax Tribunal or filing a claim of appeal with the Michigan Court of Appeals.

**197.  Where can a taxpayer learn more about the Michigan Tax Tribunal rules and appeal process?**

A taxpayer can obtain more information about the Michigan Tax Tribunal rules and appeal process online at www.michigan.gov/taxtrib or may call the Michigan Tax Tribunal at 517-335-9760.

## MICHIGAN DEPARTMENT OF TREASURY DENIAL AND APPEAL RIGHTS

**198.  Does the Michigan Department of Treasury have the authority to deny a principal residence exemption?**

Yes. In accordance with MCL 211.7cc(8), the Michigan Department of Treasury may deny a claim for a principal residence exemption.

**199.  Which years can the Michigan Department of Treasury deny a principal residence exemption?**

The Michigan Department of Treasury may deny a claim for exemption for the current year and for the 3 immediately preceding calendar years.

**200.  Is there a form that the Michigan Department of Treasury must use when denying a principal residence exemption?**

No. MCL 211.7cc(8) only requires that the Michigan Department of Treasury issue a notice of denial in writing stating the reason for the denial and advising the owner that the denial may be appealed to the Michigan Department of Treasury within 35 days of receipt of the notice of denial.

**201. Who must the Michigan Department of Treasury notify of the denial of the principal residence exemption?**

In accordance with MCL 211.7cc(8), the Michigan Department of Treasury must notify the owner and the local tax collecting unit of the denial. This would include the local Assessor, local treasurer and county treasurer.

**202. Why did the Michigan Department of Treasury deny a principal residence exemption on a home?**

The Michigan Department of Treasury mailed a questionnaire requesting documentation to verify that the taxpayer owned and occupied the property as a principal residence, and either no response to that questionnaire was received or the response received did not verify that the taxpayer owned and occupied the property as a principal residence or met the other requirements stated in MCL 211.7cc and MCL 211.7dd for the year(s) being denied.

**203. Why did the Michigan Department of Treasury deny a principal residence exemption on a parcel of land next to a taxpayer's home?**

The principal residence exemption on the contiguous or adjoining property was denied because the property was not classified residential, or timber-cutover, and/or the property was not unoccupied, and/or because the principal residence exemption on the main parcel has been denied.

**204. Why did the taxpayer receive a principal residence exemption denial on agricultural property?**

The Michigan Department of Treasury does not review Qualified Agricultural Exemptions. However, because a Qualified Agricultural Exemption results in the same tax savings as a principal residence exemption, some Assessors place a principal residence exemption on agricultural property. The Michigan Department of Treasury does not have any authority to grant an Agricultural Exemption. As a result, please do not submit an appeal to the Michigan Department of Treasury requesting an Agricultural Exemption. The Assessor should be contacted in these instances.

For more information regarding Qualified Agricultural Exemptions, please refer to the Qualified Agricultural Property Exemption Guidelines.

**205. How can a taxpayer initiate an appeal with the Michigan Department of Treasury?**

An appeal to the Michigan Department of Treasury can be initiated by requesting an informal conference in writing with the Michigan Department of Treasury within 35 days from the date the taxpayer received the denial notice. The appeal letter must request an informal conference and explain the reasons for disagreeing with the denial.

**206. Where can a taxpayer submit an appeal?**

Submit your written request for an informal conference and any available documentation to the PRE@michigan.gov. If email is not available, appeals may also be submitted via mail to Michigan Department of Treasury, Principal Residence Exemption Unit, P.O. Box 30440, Lansing MI 48909.

**207. When must a taxpayer appeal the Michigan Department of Treasury's denial of the principal residence exemption to the Michigan Department of Treasury?**

In accordance with MCL 211.7cc(8), an owner may appeal a denial by the Michigan Department of Treasury within 35 days of receipt of the notice of denial.

**208. What if a taxpayer does not appeal a denial of a principal residence exemption to the Michigan Department Treasury within 35 days of receipt of the denial?**

Appeals that are not timely received by the Michigan Department of Treasury will not be granted an informal conference and the denial of the principal residence exemption will be upheld as issued.

**209. Can an attorney or other representative appeal on a taxpayer's behalf?**

Yes. An attorney or other representative may appeal on a taxpayer's behalf. However, an Authorized Representative Declaration (Power of Attorney) (Form 151), is required to be on file with the Principal Residence Exemption Unit authorizing the attorney or other representative to act on the taxpayer's behalf.

**210. Can an Assessor, or a local unit or County Treasurer appeal a denial issued by the Department of Treasury on the taxpayer's behalf?**

No. They may, however, submit written information supporting the claim on the owner's behalf within 35 calendar days of the date the denial is issued. The Michigan Department of Treasury will consider the submitted information, but the written information submitted by the Assessor will not be treated as an appeal.

**211. What documentation should the taxpayer submit prior to an informal conference?**

The taxpayer should submit documents verifying ownership and occupancy for each year the principal residence exemption was denied. Ultimately, the burden of proof is on the taxpayer to prove eligibility for a principal residence exemption.

### 212.  What documentation is acceptable to verify ownership?

Copies of a warranty deed; quit claim deed; land contract; or full copy of a trust (if the property is owned by a trust) are acceptable.

### 213.  What documentation is acceptable to verify occupancy?

Generally, documentation demonstrating occupancy may include: *(This is not an all-inclusive list and no one item is particularly controlling.)*

A. Both sides of a Michigan driver's license with property address.
B. A voter's registration record.
C. Motor vehicle registration.
D. Utility bills with owner's name and the mailing address of the property.
E. Cable bills with owner's name and the mailing address of the property.
F. Telephone bills with owner's name and the mailing address of the property.
G. Bank and charge accounts showing purchases in the vicinity of the property.
H. Medical bills with owner's name and the mailing address of the property.

### 214.  How does a taxpayer know if an appeal has been received?

The taxpayer will receive an Appeal Received letter confirming that the appeal has been received by the Michigan Department of Treasury.

### 215.  How will a taxpayer know when an informal conference is scheduled?

The Michigan Department of Treasury shall set a date and time for the informal conference and shall give the taxpayer reasonable certified written notice not less than 20 days before the informal conference. Informal conferences are generally held on the phone.

### 216.  What if a taxpayer is unable to make the date or time of scheduled informal conference?

The taxpayer may request a change in the date of time of a scheduled informal conference. A request for a change in date or time must be made in writing and received at least 48 hours before the informal conference. Requests will only be granted for reasonable cause. If the taxpayer does not participate, the conference will proceed in his/her absence.

**217.  Does the taxpayer have to appear in person to the informal conference?**

Informal conferences are conducted by telephone. If a taxpayer wishes to appear in person, a written request must be submitted indicating the taxpayer wants an in-person hearing.

**218.  How long are informal conferences?**

Informal conferences last 30 minutes. The taxpayer and the Michigan Department of Treasury each get 10 minutes to present their case and 5 minutes each of rebuttal time.

**219.  Are informal conferences recorded?**

Generally, the informal conferences are not recorded. However, at the party's own expense and with advance written notice to the other party, a taxpayer or the Michigan Department of Treasury, or both, may make an audio recording of an informal conference.

**220.  Can a taxpayer withdraw a request for an informal conference?**

A taxpayer who has made a timely request for an informal conference may at any time withdraw that request by filing written notice with the department. Upon receipt of the request for withdrawal from the informal conference process, the department shall issue a decision and order of determination.

**221.  Will the taxpayer be notified of the decision regarding the appeal during the informal conference?**

No. Following the informal conference, the Hearing Referee will provide a written recommendation to the Director of the Bureau of Tax Policy who will issue a final Decision and Order of Determination in the matter.

**222.  How will a taxpayer be notified of the decision regarding the appeal?**

The Hearings Division of the Michigan Department of Treasury will send the written recommendation and final Decision and Order of Determination by certified mail to the taxpayer's last known legal address.

**223.  What if the taxpayer disagrees with the decision of the Hearings Division of the Michigan Department of Treasury?**

In accordance with MCL 211.7cc(13), an owner may appeal a final decision of the Michigan Department of Treasury to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision.

**224.  How can a taxpayer initiate an appeal with the Michigan Tax Tribunal?**

An appeal to the Michigan Tax Tribunal can be initiated by the timely filing of a petition form, Petition for Denial of Exemption for Principal Residence/Qualified Agricultural, with the Michigan Tax Tribunal. A $25.00 filing fee may be required.

**225.  Where can a taxpayer obtain a petition form to appeal a denial of a principal residence exemption to the Michigan Tax Tribunal?**

The taxpayer can obtain a petition form online at www.michigan.gov/taxtrib. The form, Petition for Denial of Exemption for Principal Residence/Qualified Agricultural, can be printed and mailed to the Michigan Tax Tribunal at PO Box 30232, Lansing, MI 48909. The taxpayer may also complete the form online at www.michigan.gov/taxtrib and submit it electronically, if provided for by the Michigan Tax Tribunal.

**226.  When must a taxpayer appeal the Michigan Department of Treasury's final decision of denial of the principal residence exemption to the Michigan Tax Tribunal?**

In accordance with MCL 211.7cc(13), an owner may appeal a final decision of the Michigan Department of Treasury to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision.

**227.  What if a taxpayer does not appeal a final decision of denial of a principal residence exemption by the Michigan Department of Treasury to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision?**

The Michigan Tax Tribunal may dismiss the appeal as untimely.

**228.  Where would a taxpayer appeal a ruling of the Michigan Tax Tribunal?**

If a Proposed Opinion and Judgment is issued by the Michigan Tax Tribunal, the taxpayer may appeal by filing exceptions with the Michigan Tax Tribunal. If a Final Opinion and Judgment is issued by the Michigan Tax Tribunal, the taxpayer may appeal by filing a Motion of Reconsideration with the Michigan Tax Tribunal or file a claim of appeal with the Michigan Court of Appeals. A taxpayer may wish to consult an attorney regarding appeal rights to the Michigan Court of Appeals.

**229.  Where can a taxpayer learn more about the Michigan Tax Tribunal rules and appeal process?**

A taxpayer can obtain more information about the Michigan Tax Tribunal rules and appeal process online at www.michigan.gov/taxtrib or may call the Michigan Tax Tribunal at 517-335-9760.

# CHAPTER 11: TAX BILLS ISSUED AS A RESULT OF A DENIAL

When a denial of a Principal Residence Exemption is issued, a supplemental tax bill must be issued for the taxes and interest owed as a result of the denial. Depending on specific circumstances, the supplemental tax bill can come from either the local/county treasurer or the Michigan Department of Treasury.

**A bill issued as a result of a principal residence exemption denial may be issued by the local and county treasurer or the Michigan Department of Treasury. Please refer to the proper section depending on who issued the bill:**

- Local/County Treasurer Tax Bills

- Michigan Department of Treasury Tax Bills

## LOCAL/COUNTY TREASURER TAX BILLS

**230.  Why did the local/county treasurer issue a supplemental tax bill as a result of the denial of the principal residence exemption?**

Depending on who is in possession of the tax roll, the local or county treasurers are required to amend the tax roll to reflect the denial and within 30 days of the date of the denial issue a corrected tax bill for any additional taxes with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last payable without interest or penalty.

**231.  Are partial payments allowed?**

Most counties and local units require full payment. If a taxpayer is allowed to make a partial payment, any funds received will first be applied to interest and related fees. The remainder of taxes owed will continue to accumulate interest and may result in a lien against the property.

*Some local municipalities and counties may allow for payment plans. Contact the county and/or local unit to inquire about the availability of payment plans.*

**232.  Can interest be waived?**

The Michigan Department of Treasury may waive interest in circumstances involving an error as detailed in Subsection (8) of MCL 211.7cc. The Assessor must complete an Assessor's Affidavit to Waive Principal Residence Exemption Denial Interest (Form 4813) and include all of the required documentation.

*See Chapter 12 to learn more about interest charged and the interest waiver process.*

**233.  Can the amounts owed be disputed?**

Please contact the local/county treasurer to determine if the correct amount of taxes and interest were billed as a result of the denial of the principal residence exemption.

**234.  Can the denial of the principal residence exemption be disputed?**

If the denial notice was issued by the County Treasurer, Equalization Director or the Assessor, an owner has 35 days from the date of the denial notice to appeal to the Michigan Tax Tribunal in accordance with Subsections 6 and 11 of MCL 211.7cc. If the denial notice was issued by the Michigan Department of Treasury, an owner has 35 days from the date the owner received the notice to appeal to the Hearings Division of the Michigan Department of Treasury in accordance with Subsection 8 of MCL 211.7cc.

*See Chapter 10 to learn more about the denial of a principal residence exemption and related appeal rights.*

**235.  Do the additional taxes have to be paid before an owner can appeal the denial of the principal residence exemption to the Michigan Tax Tribunal or Michigan Department of Treasury?**

No. Taxes do not have to be paid at the time of the appeal. However, the taxes are a lien on the property and interest at a rate of 1.25% per month or fraction of a month and any related fees may be added as permitted or mandated by law. If an appeal is unsuccessful and the denial is upheld, interest and related fees will be charged from the original due date of the taxes. The Michigan Department of Treasury recommends that the supplemental tax bill be paid in order that interest no longer accrues. If an appeal is successful, a refund for the taxes and interest that were paid as a result of the denial will be issued.

**236.  The owner missed the 35-day deadline to appeal the Assessor and/or county's denial of the principal residence exemption to the Michigan Tax Tribunal. What recourse does an owner have upon receiving the local/county principal residence exemption tax bills?**

Unless the Michigan Tax Tribunal issues a final decision reinstating the principal residence exemption for the years denied, the local/county treasurer is obligated to continue to bill for the taxes and interest owed as a result of the denial of the principal residence exemption. The owner may wish to contact the Michigan Tax Tribunal to explain the reasons for filing a late appeal.

*See Chapter 10 to learn more about the denial of a principal residence exemption and appeal rights.*

**237.  The owner missed the 35-day deadline to appeal the Michigan Department of Treasury's denial to the Michigan Department of Treasury. What recourse does an owner have upon receiving the local/county principal residence exemption tax bills?**

Unless the Michigan Department of Treasury issues a final decision reinstating the principal residence exemption for the years denied, the local/county treasurer is obligated to continue to bill for the taxes and interest owed as a result of the denial of the principal residence exemption. There is nothing in the statute to allow the Michigan Department of Treasury to give additional time if the denial was received. An appeal may still be submitted along with an explanation as to why the appeal was not submitted within the 35-day deadline. The information provided in the appeal will be reviewed and the Michigan Department of Treasury will issue a written decision whether or not to consider the appeal as timely.

*See Chapter 10 to learn more about the denial of a principal residence exemption and appeal rights.*

**238.  What if an owner chooses not to appeal the denial of the principal residence exemption and not pay the additional taxes, interest and penalties listed on the local/county treasury's tax bill(s)?**

The taxes owed as a result of the denial become a lien on the property. In addition, the taxes levied in a corrected or supplemental tax bill shall be returned as delinquent on March 1 in the year immediately succeeding the year in which the corrected or supplemental tax bill is issued. If the taxes continue to go unpaid, an owner may lose ownership of the property through the tax forfeiture process.

**239.  How are refunds issued if the Michigan Department of Treasury or Michigan Tax Tribunal reinstates the principal residence exemption?**

The local/county treasurer in possession of the tax roll issues the refund. The refund will include any taxes, interest or penalties that the owner paid on non-principal residence taxes and is issued within 30 days of the date the notice is received. Refunds will not accrue interest.

**240.  Is there a situation where the local/county treasurer shall not remove the principal residence exemption from the tax roll, issue a corrected/supplemental tax bill and charge interest as a result of a denial of a principal residence exemption?**

Yes. If the property is sold to a bona fide purchaser, the local/county treasurer must not remove the principal residence exemption from the tax roll and must not issue a corrected/supplemental tax bill or charge interest.

**241. What is a bona fide purchaser?**

A bona fide purchaser is one who purchases a property in good faith for valuable consideration. A person or entity who receives property through an inheritance, foreclosure or a quit claim without valuable consideration, would not be considered a bona fide purchaser.

**242. Is the owner who was denied the principal residence exemption still liable for the taxes and interest owed when the property is sold to a bona fide purchaser?**

The owner who was denied the principal residence exemption but sold the property to a bona fide purchaser is still liable for the taxes and interest that are charged as a result of the denial of the principal residence exemption. However, the Michigan Department of Treasury, and not the local/county treasurer, bills the owner who was denied the principal residence exemption for the taxes and interest owed for the tax years denied.

**243. If the property was sold to a bona fide purchaser, how is the Michigan Department of Treasury notified that it is required to bill the owner who was denied the principal residence exemption for the taxes and interest owed as a result of the denial?**

The Request to Bill Seller Following a Principal Residence Exemption (PRE) Denial (Form 4816) and required documents must be submitted by the county or local treasurer (whoever is in possession of the tax roll) when requesting the Michigan Department of Treasury to bill a seller for additional taxes, interest and penalties resulting from a principal residence exemption denial where the property has been transferred to a bona fide purchaser.

*The county or local treasurer must use the latest version of Form 4816. Incomplete forms or failure to provide the required documentation will result in inaccurate billings or delays in processing. Use a separate form for each property tax identification number.*

**244. If the Michigan Department of Treasury determines upon reviewing the Request to Bill Seller Following a Principal Residence Exemption (PRE) Denial (Form 4816), that the new owner is not a bona fide purchaser, who is responsible for the additional taxes, interest and penalties as a result of the principal residence exemption denial?**

Upon reviewing the information, if the Michigan Department of Treasury has determined that the new owner is not a bona fide purchaser, the Michigan Department of Treasury will notify the Assessor and local/county treasurer that the taxes must be added back to the tax roll and

the local/county treasurer should issue a bill to the current owner for the additional taxes, interest and penalties which become a lien on the property.

**245. If the Michigan Department of Treasury determines that upon reviewing the** Request to Bill Seller Following a Principal Residence Exemption (PRE) Denial (Form 4816)**, that the new owner is a bona fide purchaser, who is responsible for the additional taxes, interest and penalties as a result of the principal residence exemption denial?**

Upon review of the completed form and supporting documents, the Michigan Department of Treasury will process and issue a tax bill, which will include additional taxes and applicable interest and penalties, to the person(s) or entity listed on the Request to Bill Seller Following a Principal Residence Exemption (PRE) Denial (Form 4816). The person(s) or entity to be billed should be the person(s) or entity who was denied the principal residence exemption.

## MICHIGAN DEPARTMENT OF TREASURY TAX BILLS

**246. Why did an owner receive a tax bill from the Michigan Department of Treasury instead of the local/county treasurer as a result of the denial of the principal residence exemption?**

Upon reviewing the Request to Bill Seller Following a Principal Residence Exemption (PRE) Denial (Form 4816), the Michigan Department of Treasury determined the property was sold to a bona fide purchaser. Once it is determined that the property was sold to a bona fide purchaser, the Michigan Department of Treasury is then required to issue a tax bill to the owner who claimed the exemption under this section for the tax and interest plus penalty accruing as a result of the denial of the claim for exemption, if any, as for unpaid taxes.

**247. Are partial payments allowed?**

Please call the Michigan Department of Treasury's Collections Unit at 517-636-5265 to set up a payment arrangement. If a taxpayer is allowed to make a partial payment, any funds received will first be applied to interest and related fees. The remainder of taxes owed will continue to accumulate interest.

**248. Can interest be waived?**

The Michigan Department of Treasury may waive interest in circumstances involving an error as detailed in MCL 211.7cc. The Assessor must complete an Assessor's Affidavit to Waive Principal Residence Exemption Denial Interest (Form 4813) and include all of the required documentation.

*See Chapter 12 to learn more about interest charged and the interest waiver process.*

### 249. Can the amounts owed be disputed?

A detailed letter with supporting documents disputing the amount of taxes and interest owed can be mailed to the Michigan Department of Treasury, PRE Unit, P. O. Box 30440, Lansing, Michigan 48909 or e-mailed at PRE@Michigan.gov.

### 250. Can the denial of the principal residence exemption be disputed?

If the denial notice was issued by the County Treasurer, Equalization Director or the Assessor, an owner has 35 days from the date of the denial notice to appeal to the Michigan Tax Tribunal in accordance with Subsections 6 and 11 of MCL 211.7cc. If the denial notice was issued by the Michigan Department of Treasury, an owner has 35 days from the date the owner received the notice to appeal to the Hearings Division of the Michigan Department of Treasury in accordance with Subsection 8 of MCL 211.7cc.

*See Chapter 10 to learn more about the denial of a principal residence exemption and appeal rights.*

### 251. The owner missed the 35-day deadline to appeal the Assessor's and/or County's denial of the principal residence exemption to the Michigan Tax Tribunal. What recourse does an owner have upon receiving the Michigan Department of Treasury's principal residence exemption tax bills?

Unless the Michigan Tax Tribunal issues a final decision reinstating the principal residence exemption for the years denied, the Michigan Department of Treasury is obligated to continue to bill for the taxes and interest owed as a result of the denial of the principal residence exemption.

*See Chapter 10 to learn more about the denial of a principal residence exemption and appeal rights.*

### 252. The owner missed the 35-day deadline to appeal the Michigan Department of Treasury's denial to the Michigan Department of Treasury. What recourse does the owner have upon receiving the Michigan Department of Treasury's principal residence exemption tax bill(s)?

Unless the Michigan Department of Treasury issues a final decision reinstating the principal residence exemption for the years denied, the local/county treasurer is obligated to continue to bill for the taxes and interest owed as a result of the denial of the principal residence exemption. There is nothing in the statute to allow the Michigan Department of Treasury to give additional time if the denial was received. An appeal may still be submitted along with an explanation as to why the appeal was not submitted within the 35-day deadline. The information provided in your appeal will be reviewed and the Michigan Department of Treasury's will issue a written decision whether or not to consider the appeal as timely.

*See Chapter 10 to learn more about the denial of a principal residence exemption and appeal rights.*

### 253.  What should a person do if a tax bill(s) was received for taxes and interest owed as a result of a denial of a principal residence exemption for years that person did not own the property?

A detailed letter disputing the tax bill(s) with supporting documents verifying ownership can be mailed to the Michigan Department of Treasury, PRE Unit, P. O. Box 30440, Lansing, Michigan 48909 or e-mailed at PRE@Michigan.gov. Acceptable verification of ownership may include warranty deeds; quit claim deeds; land contracts; life estates; life leases (holder of the life lease must have been the prior owner); will or trust showing that the beneficiary owns the property; or a revocable trust or a qualified personal residence trust showing that the grantor has placed the property into the trust. Along with the letter and submitted supporting documents, the owner should submit a copy of the tax bill and a phone number where the Michigan Department of Treasury may contact the owner if there are any questions.

### 254.  Do the additional taxes have to be paid before an owner can appeal the denial of the principal residence exemption to the Michigan Tax Tribunal or Michigan Department of Treasury?

No. Taxes do not have to be paid at the time of the appeal. However, interest at a rate of 1.25% per month or fraction of a month and any related fees may be added as permitted or mandated by law. If an appeal is unsuccessful and the denial is upheld, interest and related fees will be charged from the original due date of the taxes. The Michigan Department of Treasury recommends that the supplemental tax bill be paid in order that interest no longer accrues. If an appeal is successful, a refund for the taxes and interest that are paid as a result of the denial will be issued.

### 255.  What if an owner chooses not to pay the additional taxes, interest and penalties listed on the Michigan Department of Treasury's Principal Residence Exemption Tax bill(s)?

The account will be referred to the Michigan Department of Treasury's Collection Division where a "Bill for Taxes/Intent to Assess" notice will be issued. Additional interest and penalties will accumulate. The Michigan Department of Treasury's Collection Division will take various collection actions to collect the amounts due.

### 256. Where should an owner submit a payment?

Payment for the additional taxes, interest and penalties listed on the principal residence exemption tax due bill(s) must be submitted to the address on the payment voucher (bottom portion of the bill). The payment voucher must be included with the payment to ensure the payment is correctly posted to the owner's account. If the owner received multiple principal residence exemption tax bills, all payment vouchers must be included with the payment to ensure the payment is correctly posted.

### 257. How are refunds issued if the Hearings Division of the Michigan Department of Treasury or Michigan Tax Tribunal reinstates the principal residence exemption?

The Michigan Department of Treasury issues the refund. The refund will include any taxes, interest or penalties that the owner paid on non-principal residence taxes and is issued within 30 days of the date the notice is received. Refunds will not accrue interest.

### 258. How are payments to the Michigan Department of Treasury made?

Please follow the instructions on the tax bill regarding payments. For questions concerning payments, contact the Principal Residence Exemption (PRE) Unit at pre@michigan.gov.

## CHAPTER 12: INTEREST CHARGED AS A RESULT OF A DENIAL

MCL 211.7cc(8) requires that a corrected tax bill for additional taxes with interest at the rate of 1.25% per month be billed from the date the taxes were last payable without interest. Interest is not punitive in nature but charged for the use of money. On March 18, 2010, MCL 211.7cc was amended to allow the Michigan Department of Treasury to waive interest following a principal residence exemption denial in certain circumstances. Specifically, the amended MCL 211.7cc(8) states:

> The department of treasury may waive interest on any tax set forth in a corrected or supplemental tax bill for the current tax year and the immediately preceding 3 tax years if the assessor of the local tax collecting unit files with the department of treasury a sworn affidavit in a form prescribed by the department of treasury stating that the tax set forth in the corrected or supplemental tax bill is a result of the assessor's classification error or other error or the assessor's failure to rescind the exemption after the owner requested in writing that the exemption be rescinded.

Therefore, in order to qualify for a waiver of interest, an Assessor's Affidavit to Waive Principal Residence Exemption (PRE) Denial Interest (Form 4813), must be filed with the Department of Treasury stating the alleged Assessor's error. In accordance with MCL 211.7cc(8), Assessor errors are: (1) an Assessor's classification error, (2) an Assessor's failure to rescind the exemption after the owner requested in writing that the exemption be rescinded, (3) or "other error" that would justify the waiver of interest.

## INTEREST CHARGED AS A RESULT OF A DENIAL

**259.  Why is interest being charged as a result of a denial of a principal residence exemption?**

Following the notice of a principal residence exemption denial, MCL 211.7cc requires that interest be charged. Interest is not punitive in nature but charged for the use of the money.

**260.  What is the interest rate that must be charged?**

Following the notice of a principal residence exemption denial, MCL 211.7cc requires that a corrected tax bill be issued for additional taxes with interest at the rate of 1.25% per month or fraction of a month from the date the taxes were last payable without interest.

**261.  When must interest begin to accrue again following the initial tax bill issued as a result of a denial of a principal residence exemption?**

Interest on any tax set forth in a corrected or supplemental tax bill shall again begin to accrue 60 days after the date the corrected or supplemental tax bill is issued at the rate of 1.25% per month or fraction of a month.

**262.  What are the consequences for the taxpayer if the supplemental tax bill along with the interest are not paid?**

The taxes levied in a corrected or supplemental tax bill shall be returned as delinquent on March 1st in the year immediately succeeding the year in which the corrected or supplemental tax bill is issued.

**263.  Can interest be waived?**

Yes. Only the Michigan Department of Treasury may waive interest. The Michigan Department of Treasury may waive interest if the waiver interest process is completed and there was an "error" as defined by MCL 211.7cc(8).

*The local/county treasurer, Assessor, and/or Board of Review have no authority to waive interest that is being charged as a result of a denial of a principal residence exemption.*

**264.  Can the Michigan Department of Treasury waive penalties, administration fees or other fees?**

No. The Michigan Department of Treasury only has the authority to waive the interest that is being charged, and does not have the authority to waive penalties, administration fees or other fees that are being charged as a result of the denial of the principal residence exemption.

**INTEREST WAIVER PROCESS**

**265.  Is the Michigan Department of Treasury required to waive interest?**

No. In accordance with MCL 211.7cc(8), the Michigan Department of Treasury ***may*** waive interest but is not required to waive interest. Specifically, MCL 211.7cc(8) states in part:

> The department of treasury ***may*** waive interest on any tax set forth in a corrected or supplemental tax bill for the current tax year and the immediately preceding 3 tax years if the assessor of the local tax collecting unit files with the department of treasury a sworn affidavit in a form prescribed by the department of treasury stating that the tax set forth in the corrected or supplemental tax bill is a result of the assessor's classification error or other error or the assessor's failure to rescind the exemption after the owner requested in writing that the exemption be rescinded. *(emphasis added)*

**266.  What must occur before the Michigan Department of Treasury may consider waiving interest?**

The Michigan Department of Treasury may only consider waiving interest if the Assessor completes, signs, and files with the Michigan Department of Treasury the Assessor's Affidavit to Waive Principal Residence Exemption (PRE) Denial Interest (Form 4813). Attached with the Assessor's Affidavit to Waive Principal Residence Exemption (PRE) Denial Interest (Form 4813), the Assessor must include the following:

1. A written letter from the taxpayer requesting the interest be waived and explaining why the taxpayer feels interest should be waived;
2. A copy of the denial notice;
3. A copy of the corrected or supplemental tax bill(s);
4. A letter from the Assessor explaining in detail the "error" that would justify the waiver of interest; and
5. Copies of any supporting or relevant documents.

**267.  Is the Assessor obligated to complete the Assessor's Affidavit to Waive Principal Residence Exemption (PRE) Denial Interest (Form 4813)?**

No. The Assessor should only complete and submit the Assessor's Affidavit to Waive Principal Residence Exemption (PRE) Denial Interest (Form 4813), if there was an error that would justify waiver of the interest as defined in MCL 211.7cc(8).

**268.  What are "errors" that the Michigan Department of Treasury may consider to justify the waiver of interest?**

The Michigan Department of Treasury may only consider waiving interest if an error occurred as defined by MCL 211.7cc(8). Errors would include: (1) Assessor's classification error; (2) Assessor's failure to rescind the exemption after the owner requested in writing that the exemption be rescinded; (3) and/or other error.

**269.  The Michigan Department of Treasury denied the principal residence exemption on a contiguous piece of property since it was classified commercial. The Assessor completed and submitted the Assessor's Affidavit to Waive Principal Residence Exemption (PRE) Denial Interest (Form 4813). The Assessor indicated on this form that interest should be waived since the property was classified commercial in error and that it should have been classified residential instead. Is this an error that would justify the waiver of interest?**

An Assessor's classification error is an error that would justify the waiver of interest. A classification error is the situation where the Assessor mistakenly classified the owner's contiguous property. If, in this situation, the owner requested that the property be classed as commercial, then this is not an Assessor's classification error and interest would not be waived.

**270. The Michigan Department of Treasury denied the principal residence exemption since the owner no longer occupied the property. The Assessor completed and submitted the Assessor's Affidavit to Waive Principal Residence Exemption (PRE) Denial Interest (Form 4813). The Assessor indicated on this form that interest should be waived since the owner filed a timely rescission form with the Assessor, but the Assessor failed to remove the principal residence exemption based on the timely filed recession form. Is this an error that would justify the waiver of interest?**

Yes. The Assessor's failure to rescind the exemption after the owner requested in writing that the exemption be rescinded is an error that would justify the waiver of interest. However, if the written request to rescind was not timely filed with the Assessor, then the interest will not be waived.

*See* **Chapter 5** *to learn more about* *Rescission of a Claim: An Owner's Responsibility.*

**271. What is an "other error"?**

The statute does not define "other error." However, the Michigan Tax Tribunal in *Hardenbergh v Michigan Department of Treasury, MTT Docket No. 14-000990* held that "other errors" are those akin to classification errors. As a result, the following situations are not "other errors":

1. Ignorance of the Law: There is no statutory provision that grants a waiver of interest for ignorance of the law, even if the ignorance is reasonable given the circumstances;
2. A misinterpretation of the statute;
3. Fairness or equitable assertions; or
4. Erroneous reliance on "guidance" from the Assessor or any other local official.

**272. Who will review the request to waive interest?**

The Michigan Department of Treasury will review the request to waive interest.

**273. How will an owner know the result of the review by the Michigan Department of Treasury's Principal Residence Exemption Unit?**

The owner, County Treasurer, and Assessor will be notified, in writing, that the request to waive interest is granted or denied.

**274. If the request to waive interest is granted, who issues the refund of any interest that was paid as a result of the denial of the principal residence exemption?**

The local/county treasurer will issue the refund if the taxes, interest, and penalties were paid to the local/county treasurer. The Michigan Department of Treasury will issue the refund if the taxes, interest, and penalties were paid to the Michigan Department of Treasury.

**275. What if an owner disagrees with the Michigan Department of Treasury's denial of the interest waiver request?**

In accordance with MCL 211.7cc(13), an owner may appeal a final decision of the Michigan Department of Treasury to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision.

**276. How can an owner initiate an appeal with the Michigan Tax Tribunal?**

An appeal to the Michigan Tax Tribunal can be initiated by the timely filing of a petition form, Petition for Denial of Exemption for Principal Residence/Qualified Agricultural, and the $25.00 filing fee, if required, with the Michigan Tax Tribunal. The petition must be a Michigan Tax Tribunal form, or a form approved by the Michigan Tax Tribunal.

**277. Where can an owner obtain a petition form to appeal a denial of the interest waiver request to the Michigan Tax Tribunal?**

An owner can obtain a petition form online at www.michigan.gov/taxtrib. You can print the form, Petition for Denial of Exemption for Principal Residence/Qualified Agricultural, and mail the completed form to the Michigan Tax Tribunal at PO Box 30232, Lansing, MI 48909 or complete the form online and submit it electronically, if provided for by the Michigan Tax Tribunal.

**278. When must an owner appeal the Michigan Department of Treasury's final decision of the denial of the interest waiver request to the Michigan Tax Tribunal?**

In accordance with MCL 211.7cc(13), an owner may appeal a final decision of the Michigan Department of Treasury to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision.

**279. What if an owner does not appeal a final decision of the denial of the interest waiver request by the Michigan Department of Treasury to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision?**

The Michigan Tax Tribunal may dismiss the appeal as untimely.

**280.  Where can an owner learn more about the Michigan Tax Tribunal appeal rules and appeal process?**

An owner can obtain more information about the Michigan Tax Tribunal rules and appeal process online at www.michigan.gov/taxtrib or the taxpayer may call the Michigan Tax Tribunal at 517-335-9760.

**281.  What if an owner disagrees with the ruling of the Michigan Tax Tribunal?**

An owner may appeal the final decision of the Michigan Tax Tribunal to the Michigan Court of Appeals.

# CHAPTER 13: PRINCIPAL RESIDENCE EXEMPTION-QUALIFIED ERROR

A request for a principal residence exemption as a result of a qualified error is the process which allows an owner who owned and occupied a principal residence within the time period prescribed in subsection (2) to receive a principal residence exemption in any year before the 3 immediately preceding tax years for which the exemption was not on the tax roll as a result of a qualified error on the part of the local tax collecting unit. MCL 211.7cc(20)

While the Assessor can grant a principal residence exemption for the current and 3 immediately preceding tax years, only the Michigan Department of Treasury may grant a principal residence exemption in any year before the 3 immediately preceding tax years for which the exemption was not on the tax roll as a result of a qualified error on the part of the local tax collecting unit.

## PROCESS BY WHICH AN OWNER REQUESTS A PRINCIPAL RESIDENCE EXEMPTION-QUALIFIED ERROR

**282. Is there a form that an owner must use to request a principal residence exemption that was not on the tax roll as a result of a qualified error on the part of the local tax collecting unit?**

Yes. The owner must submit a completed Request for Principal Residence Exemption – Qualified Error (Form 5101) with the Michigan Department of Treasury.

**283. Where can an owner obtain a Request for Principal Residence Exemption – Qualified Error (Form 5101)?**

The owner can obtain Request for Principal Residence Exemption – Qualified Error (Form 5101) online at www.michigan.gov/PRE.

**284. Is there a fee that an owner must pay when submitting the Request for Principal Residence Exemption – Qualified Error (Form 5101)?**

Yes. The Form 5101 submission must also include a $150 processing fee. The fee will be refunded if the request is approved or partially approved by the Michigan Department of Treasury.

**285.  What other documents is the owner required to submit with the completed Request for Principal Residence Exemption – Qualified Error (Form 5101)?**

Along with the Form 5101, the taxpayer must submit evidence that he/she owned and occupied the property as his/her principal residence and none of the disqualifying factors applied for the years at issue; and that a "qualified error" as defined by MCL 211.53b occurred that resulted in not having the principal residence exemption on the tax roll.

**286.  What documents indicate that a person is occupying the property as a principal residence?**

Ultimately, the taxpayer has the burden to prove his or her eligibility for the tax exemption. If the property is the person's principal residence, that person should be able to show ample documentation bearing the address of the parcel at issue that is consistent with a person's principal residence. Occupancy as a person's principal residence is more than just stating the intent to reside there. However, a person's intent is reflected in the address listed on the following documents: driver's license; voter registration record; vehicle registration; income tax returns showing the mailing address; utility bills showing service and mailing address and person who is to be billed; bank/charge accounts showing purchases within the vicinity of the property; medical billings from physicians within the vicinity of the property; and/or insurance policies.

*See Chapter 3 to learn more about the occupancy requirement.*

**QUALIFIED ERROR DEFINED**

**287.  What is a qualified error?**

In accordance with MCL 211.7cc(34)(d), "Qualified error" means that term as defined in section 211.53b. As defined in 211.53b, "qualified error" means 1 or more of the following:

- A clerical error relative to the correct assessment figures, the rate of taxation, or the mathematical computation relating to the assessing of taxes.
- A mutual mistake of fact.
- An adjustment under section 27a(4) or an exemption under section 7hh(3)(b).
- An error of measurement or calculation of the physical dimensions or components of the real property being assessed.
- An error of omission or inclusion of a part of the real property being assessed.
- An error regarding the correct taxable status of the real property being assessed.

- An error made by the taxpayer in preparing the statement of assessable personal property under section 19.
- An error made in the denial of a claim of exemption for personal property under section 9o.

**288.  What is the definition of a clerical error?**

Clerical Error was defined by the *Court of Appeals in International Place Apartments v Ypsilanti Township 216 Mich App 104; 548 NW2d 668 (1996)*, as "an error of a transpositional, typographical, or mathematical nature."

**289.  What is the definition of a mutual mistake of fact?**

Mutual Mistake of Fact was defined by the Court of Appeals in *Ford Motor Co v City of Woodhaven, 475 Mich 425; 716 NW2d 247 (2006)* as "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." This definition was clarified by the Michigan Supreme Court in *Briggs Tax Service, LLC v Detroit Public Schools, 485 Mich 69; 780 NW2d 753 (2010)*. The Michigan Supreme Court indicated that to qualify, the "mutual mistake of fact" must be one that occurs only between the Assessor and the taxpayer.

**290.  Chris has owned and occupied Blue Acre as his principal residence since the 2000 tax year. Chris also claimed the principal residence exemption by filing the Principal Residence Exemption Affidavit (Form 2368) in the 2000 tax year. In the 2019 tax year, Chris inquires at the Assessor's office as to why he did not receive his principal residence exemption since the 2000 tax year. Upon researching, the Assessor finds the principal residence exemption affidavit file by Chris and it is date stamped by the Assessor's office as received in 2000. The Assessor inadvertently failed to process it in 2000. Chris filed a Request for Principal Residence Exemption – Qualified Error (Form 5101) with the Michigan Department of Treasury for the 2000 through 2015 tax years. Should the Michigan Department of Treasury grant the request for the 2000 through 2015 tax years?**

Yes. Chris owned and occupied the property as his principal residence and timely filed the Principal Residence Exemption Affidavit (Form 2368) with the Assessor. The Assessor's failure to process and add the principal residence exemption to the tax roll is a qualified error. As a result, the Michigan Department of Treasury would grant the Principal Residence Exemption-Qualified Error request for the years included on Form 5101.

**291.  Chris has owned and occupied Blue Acre as his principal residence since the 2000 tax year. However, his closing statement preparer failed to file the Principal Residence Exemption Affidavit (Form 2368) with the Assessor. In the 2019 tax year, Chris noticed that he was not**

receiving the principal residence exemption. Chris filed a Request for Principal Residence Exemption – Qualified Error (Form 5101) with the Michigan Department of Treasury for the 2000 through 2015 tax years. Should the Michigan Department of Treasury grant the request for the 2000 through 2015 tax years?

No. Chris' request for a principal residence exemption for the 2000 through 2015 tax years will be denied for the 2000 through 2015 tax years since a qualified error as defined by MCL 211.53b did not occur. Here, the principal residence exemption was not on the tax roll not as a result of a qualified error but as a result of Chris failing to comply with the statutory filing requirements indicated in MCL 211.7cc(2). A claim for a principal residence exemption is not properly filed unless a Principal Residence Exemption Affidavit (Form 2368) is filed with the Assessor. Since Chris did not timely file a Principal Residence Exemption Affidavit (Form 2368) with the Assessor, Chris is not eligible to receive the principal residence exemption for the 2000 through 2015 tax years.

## MICHIGAN DEPARTMENT OF TREASURY REVIEW PROCESS

**292.  Who will review the submitted Request for Principal Residence Exemption – Qualified Error (Form 5101)?**

The Michigan Department of Treasury will review submitted Request for Principal Residence Exemption – Qualified Error (Form 5101) and the supporting documentation to determine if the person claimed the principal residence exemption, occupied the property as their principal residence during the years requested, and that there was a qualified error.

**293.  What tax years can the Michigan Department of Treasury grant a principal residence exemption that was not on the tax roll as a result of a qualified error on the part of the local tax collecting unit?**

The Michigan Department of Treasury may grant a principal residence exemption in any year before the 3 immediately preceding tax years for which the exemption was not on the tax roll as a result of a qualified error on the part of the local tax collecting unit.

**294.  Chris owned and occupied Blue Acre as his principal residence since the 2016 tax year. However, his closing statement preparer failed to file the Principal Residence Exemption Affidavit (Form 2368) with the Assessor. In the 2019 tax year, Chris noticed that he was not receiving the principal residence exemption. Chris filed a Request for Principal Residence Exemption – Qualified Error (Form 5101) with the Michigan Department of Treasury for the 2016 through 2019 tax years (current and previous three years). Should the Michigan**

**Department of Treasury grant the request for the 2017 through 2020 tax years (current and previous three years)?**

No. Chris' request will be denied. The statute only allows the Michigan Department of Treasury to review a request for principal residence exemption in any year before the 3 immediately preceding tax years for which the exemption was not on the tax roll as a result of a qualified error. Here, the 2017 through 2020 tax years are for the current and previous three years which are tax years the Michigan Department of Treasury are unable to address. However, the Assessor may grant a principal residence exemption for the current and previous three years if an owner occupied a principal residence for which the exemption was not on the tax roll for the current and previous three years.

**295. How will an owner know the result of the review of the submitted Request for Principal Residence Exemption – Qualified Error (Form 5101) and the supporting documentation by the Michigan Department of Treasury?**

If the Michigan Department of Treasury approves a Request for Principal Residence Exemption – Qualified Error (Form 5101), the owner will receive a Notice of Rebate letter. If the Michigan Department of Treasury denies a Request for Principal Residence Exemption – Qualified Error (Form 5101), the owner will receive a Notice of Rebate Denial letter. In addition to sending this Notice to the owner, the Michigan Department of Treasury will also send this notice to the treasurer of the local tax collecting unit, the County Treasurer, and other relevant officials.

**296. If the submitted Request for Principal Residence Exemption – Qualified Error (Form 5101) is granted, who issues the refund/rebate?**

The treasurer of the county where the property is located will issue the rebate. A rebate, including any interest paid by the owner, shall be paid to the owner within 30 days of the receipt of the notice. A rebate shall be without interest.

**APPEAL RIGHTS**

**297. What if an owner disagrees with the Michigan Department of Treasury's denial of the submitted Request for Principal Residence Exemption – Qualified Error (Form 5101)?**

In accordance with MCL 211.7cc(13), an owner may appeal a Notice of Rebate Denial of the Michigan Department of Treasury to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision.

**298. How can an owner initiate an appeal of a Notice of Rebate Denial with the Michigan Tax Tribunal?**

An appeal to the Michigan Tax Tribunal can be initiated by the timely filing of a petition form, Petition for Denial of Exemption for Principal Residence/Qualified Agricultural, and the $25.00 filing fee, if required, with the Michigan Tax Tribunal. The petition must be a Michigan Tax Tribunal form, or a form approved by the Michigan Tax Tribunal.

**299. Where can an owner obtain a petition form to appeal to the Michigan Tax Tribunal?**

The owner can obtain a petition form online at www.michigan.gov/taxtrib. The form, Petition for Denial of Exemption for Principal Residence/Qualified Agricultural can be printed and mailed to the Michigan Tax Tribunal at PO Box 30232, Lansing, MI 48909 or complete the form online and submit it electronically, if provided for by the Michigan Tax Tribunal.

**300. How long does an owner have to appeal the Michigan Department of Treasury's Notice of Rebate Denial to the Michigan Tax Tribunal?**

In accordance with MCL 211.7cc(13), an owner may appeal a Notice of Rebate Denial of the Michigan Department of Treasury to the residential and small claims division of the Michigan Tax Tribunal within 35 days of that decision.

**301. What if an owner fails to appeal a Notice of Rebate Denial to the Michigan Tax Tribunal within 35 days of that decision?**

The Michigan Tax Tribunal may dismiss the appeal as untimely.

**302. Where can an owner learn more about the Michigan Tax Tribunal appeal rules and appeal process?**

The owner can obtain more information about the Michigan Tax Tribunal rules and appeal process online at www.michigan.gov/taxtrib or the taxpayer may call the Michigan Tax Tribunal at 517-335-9760.

**303. What if an owner disagrees with the ruling of the Michigan Tax Tribunal?**

The owner may appeal the final decision of the Michigan Tax Tribunal to the Michigan Court of Appeals.

# GLOSSARY

> **IMPORTANT:** *The definitions in this glossary are not intended as legal definitions but are provided only as an aid to the reader for the purpose of interpreting the Principal Residence Exemption statute.*

**Active Duty Military:** Full-time active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States.

**Adjoining:** Touching; sharing a common boundary. Black's Law Dictionary Deluxe (9th ed. 2009).

**Beneficiary of a Trust:** A person(s) for whose benefit property is held in trust. Black's Law Dictionary Deluxe (9th ed. 2009).

**Bonafide Purchaser:** A person who purchases property in good faith for valuable consideration.

**Claim for a Principal Residence Exemption:** The act of completing and filing a Principal Residence Exemption Affidavit (Form 2368) with the Assessor of the local tax collecting unit in which the property is located.

**Claim for a Similar Exemption:** Filing for a similar exemption or granting of a similar exemption in the other state.

**Clerical Error:** An error of a transpositional, typographical, or mathematical nature.

**Common Areas:** Areas in a bed and breakfast establishment that are available to guests as well as the owner of the bed and breakfast which include but are not limited to: kitchen, dining room, living room, fitness room, porch, hallway, laundry room, or bathroom.

**Conditional Rescission:** The process which allows an owner to receive a principal residence exemption on his or her current principal residence and retain a principal residence exemption on that owner's previously exempt property simultaneously, for up to three years, if he or she meets the statutory eligibility requirements listed in MCL 211.7cc(5).

**Contiguous:** Touching at a point or along a boundary. Black's Law Dictionary Deluxe (9th ed. 2009).

**Convalescence:** A state of recovering from a disease, operation, or injury. A convalescent may choose to be cared for at home or a relative's home rather than in a nursing home or assisted

living center. For example, a person who has just had a stroke and who is recovering and rehabilitating at a relative's home is an example of a convalescent.

**Cooperative Housing Corporation:** A legal entity which owns real estate with the purpose of providing housing to its member shareholders.

**Corrective Deed:** A deed that serves to correct minor defects in a prior deed but not substantial changes in the name of the grantee or nature of title of the grantee.

**Deed:** A written instrument by which land is conveyed. Black's Law Dictionary Deluxe (9th ed. 2009). Warranty and Quit Claim Deeds are common deeds used to convey land.

**Denial of a Principal Residence Exemption:** A statutory mechanism used by the Michigan Department of Treasury, Assessor, or County by which a claim for a principal residence exemption is rejected as a result of the taxpayer not meeting the eligibility requirements for the principal residence exemption.

**Foreclosure Entity Conditional Rescission:** A process that allows a land contract vendor, bank, credit union, or other lending institution (foreclosure entity) to retain a principal residence exemption on foreclosed property for up to 3 years if the statutory eligibility requirements listed in MCL 211.7cc(5) are met.

**Intestate:** Of or relating to a person who has died without a valid will. Black's Law Dictionary Deluxe (9th ed. 2009).

**Intestate Succession:** The method used to distribute property owned by a person who dies without a valid will. Black's Law Dictionary Deluxe (9th ed. 2009).

**Irrevocable Trust:** A trust that cannot be terminated by the settlor once it is created. Black's Law Dictionary Deluxe (9th ed. 2009).

**Lady Bird Deed:** A lady bird deed (also called an enhanced life estate deed) is a special form of life estate deed that gives the owner continued control over the property until his or her death. Once the owner dies, the property is transferred automatically to new owners without the need for probate.

**Land Contract:** A contract between the buyer and seller of real property in which the seller provides the buyer financing in the purchase, and the buyer repays the resulting loan in installments.

**Land Contract Vendee:** A purchaser of property by land contract.

**Land Contract Vendor:** A seller of property by land contract.

**Lease:** To grant the possession and use in property to another in return for rent or other consideration. Black's Law Dictionary Deluxe (9th ed. 2009).

**Lessee:** One who has a possessory interest in property under a lease. A lessee is commonly called the tenant. Black's Law Dictionary Deluxe (9th ed. 2009).

**Lessor:** One who conveys property by lease. A lessor is commonly called the landlord. Black's Law Dictionary Deluxe (9th ed. 2009).

**Life Estate:** An estate held for the duration of a person's life. Black's Law Dictionary Deluxe (9th ed. 2009).

**Life Lease:** A contract by which a rightful possessor of real property conveys the right to use and occupy the property to a person for the life of that person in exchange for consideration, usually rent. Black's Law Dictionary Deluxe (9th ed. 2009).

**Memorandum of Land Contract:** A document that evidences the existence of an executed land contract.

**Mutual Mistake of Fact:** An erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction. To qualify, the mutual mistake of fact must be one that occurs only between the Assessor and the taxpayer.

**Occupancy:** To reside in as an owner permanently or continuously.

**Owner's Conditional Rescission:** The process which allows an owner to receive a principal residence exemption on his or her current principal residence and retain a principal residence exemption on that owner's previously exempt property simultaneously, for up to three years, if he or she meets the statutory eligibility requirements listed in MCL 211.7cc(5).

**Person:** An individual.

**Previous Exempt Property:** Property that a person previously owned and occupied as his or her principal residence and he or she claimed and received a principal residence exemption.

**Principal Residence:** The one place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established. It also includes all of an owner's unoccupied property classified as residential or timber-cutover that is

adjoining or contiguous to the dwelling subject to ad valorem taxes and that is owned and occupied by the owner.

**Principal Residence Exemption:** A property tax exemption that exempts an owner's principal residence from the tax levied by a local school district for operating purposes, up to 18 mills.

**Principal Residence Exemption-Qualified Error:** The process by which an owner requests the Michigan Department of Treasury to receive a principal residence exemption in any year before the 3 immediately preceding tax years for which the exemption was not on the tax roll as a result of a qualified error on the part of the local tax collecting unit.

**Qualified Error:** An error as defined in 211.53b, which includes 1 or more of the following: A clerical error relative to the correct assessment figures, the rate of taxation, or the mathematical computation relating to the assessing of taxes; A mutual mistake of fact; An adjustment under section 27a(4) or an exemption under section 7hh(3)(b); An error of measurement or calculation of the physical dimensions or components of the real property being assessed; An error of omission or inclusion of a part of the real property being assessed; An error regarding the correct taxable status of the real property being assessed; An error made by the taxpayer in preparing the statement of assessable personal property under section 19; An error made in the denial of a claim of exemption for personal property under section 9o.

**Qualified Personal Residence Trust:** An irrevocable trust, funded with cash and the personal residence of the grantor, who retains the right to dwell in the residence for a specified term of years. Black's Law Dictionary Deluxe (9th ed. 2009). The trust document must state the trust is a qualified personal residence trust in order for it to be considered a qualified personal residence trust.

**Quit Claim Deed:** A deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid. Black's Law Dictionary Deluxe (9th ed. 2009).

**Rescission of a Claim for a Principal Residence Exemption:** The act of an owner filing a Request to Rescind Principal Residence Exemption (PRE) (Form 2602) with the Assessor of the local tax collecting unit in which the property is located not more than 90 days after exempted property is no longer used as a principal residence by the owner claiming an exemption.

**Rent:** Consideration paid for the use or occupancy of property. Black's Law Dictionary Deluxe (9th ed. 2009).

**Revocable Trust:** A trust in which the settlor reserves the right to terminate the trust and recover the trust property and any undistributed income. Black's Law Dictionary Deluxe (9th ed. 2009).

**Settlor:** One who sets up a trust. Black's Law Dictionary Deluxe (9th ed. 2009). A settlor is also known as the grantor of the trust.

**Sheriff Deed:** A deed that gives ownership rights in property bought at a sheriff's sale. Black's Law Dictionary Deluxe (9th ed. 2009).

**Spouse:** One's husband or wife by lawful marriage. Black's Law Dictionary Deluxe (9th ed. 2009)

**Statute of Frauds:** A law that requires certain contracts and documents be in writing and signed by the party to be charged. Black's Law Dictionary Deluxe (9th ed. 2009).

**Substantially Similar Exemption:** An exemption, deduction, or credit from property taxes in another state received as a result of owning the property and occupying it as your principal residence, regardless of amount.

**Totally and Permanently Disabled:** The inability to engage in any substantial gainful activity by reason of any medically determined physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months; and/or blindness.

**Trustee:** One who holds property in trust for the benefit of another and owes a fiduciary duty to that beneficiary. Black's Law Dictionary Deluxe (9th ed. 2009).

**Unoccupied:** Without human occupants such as a tenant or resident.

**Vacant:** Completely empty.

**Warranty Deed:** A deed that expressly guarantees the grantor's good, clear title and quality of title in property.

# REFERENCES

**STATUTES**

MCL 211.120: Section 211.120 of the General Property Tax Act, PA 206 of 1893, as amended

MCL 211.27a: Section 211.27a of the General Property Tax Act, PA 206 of 1893, as amended

MCL 211.34c: Section 211.34c of the General Property Tax Act, PA 206 of 1893, as amended

MCL 211.7cc: Section 211.7cc of the General Property Tax Act, PA 206 of 1893, as amended

MCL 211.7dd: Section 211.7dd of the General Property Tax Act, PA 206 of 1893, as amended

MCL 211.53b: Section 211.53b of the General Property Tax Act, PA 206 of 1893, as amended

MCL 700.2101-2106: Sections 700.2101-2106 of the General Property Tax Act, PA 206 of 1893, as amended

42 USC 416: Section 216 of Title II of the Social Security Act, 42 USC 416.

**FORMS**

**Principal Residence Exemption Affidavit (Form 2368)**

**Request to Rescind Principal Residence Exemption (Form 2602)**

**Notice of Denial of Principal Residence Exemption (Local (City/Township)) (Form 2742)**

**Notice of Denial of Principal Residence Exemption (County) (Form 4075)**

**Conditional Rescission of Principal Residence Exemption (PRE) (Form 4640)**

**Principal Residence Exemption Active Duty Military Affidavit (Form 4660)**

**Assessor's Affidavit to Waive Principal Residence Exemption (PRE) Denial Interest (Form 4813)**

**Request to Bill Seller Following a Principal Residence Exemption (PRE) Denial (Form 4816)**

**Foreclosure Entity Conditional Rescission of a Principal Residence Exemption (PRE) (Form 4983)**

**Request for Principal Residence Exemption – Qualified Error (Form 5101)**

**Principal Residence Exemption Affidavit for Similar Exemptions in Other States (Form 5565)**

## CASE LAW

*Briggs Tax Service, LLC v Detroit Public Schools, 485 Mich 69; 780 NW2d 753 (2010)*

*Donald E. Lewallen and Ronald L. Lewallen v Porter Twp unpublished opinion per curiam of the Court of Appeals, issued February 20, 2014 (Docket No. 431811)*

*Eldenbrady v City of Albion, 294 Mich App 251, 816 NW2d 449 (2012)*

*Ford Motor Co v City of Woodhaven, 475 Mich 425; 716 NW2d 247 (2006)*

*Hardenbergh v County of Manistee, unpublished opinion per curiam of the Court of Appeals, issued November 24, 2015 (Docket No. 322605)*

*Hardenbergh v Michigan Department of Treasury, MTT Docket No. 14-000990*

*In Re Estate of Moukalled, 269 Mich App 708, 721-722; 714 NW2d 400 (2006)*

*In re Tobias Estates, unpublished per curiam opinion of the Court of Appeals issued May 10, 2012 (Docket No. 304852)*

*International Place Apartments v Ypsilanti Township, 216 Mich App 104; 548 NW2d 668 (1996)*

*Levenfeld v County of Berrien, unpublished opinion per curiam of the Court of Appeals, issued January 12, 2012 (Docket No. 300358)*

*Power v Michigan Department of Treasury, 301 Mich. App. 226; 835 NW2d 622 (2013)*

*ProMed Healthcare v City of Kalamazoo, 249 Mich App 490; 644 N.W.2d 47 (2002)*

*Rentschler v Melrose Twp, 322 Mich App 113; 910 N.W.2d 711 (2017)*

*Schubert v Michigan Department of Treasury, 322 Mich App, 439; 912 N.W.2d 569 (2017)*

*Stege v Department of Treasury, 252 Mich App 183, 189; 651 NW2d 164 (2002)*

*Tenbusch v Michigan Department of Treasury, unpublished opinion per curiam of the Court of Appeals, issued March 5, 2019 (Docket No. 344239)*

*Vanderwerp v Plainfield Twp, 278 Mich App 624;* 752 N.W.2d 479 *(2008)*

**OTHER RESOURCES**

Board of Review Guidelines

Michigan Department of Treasury Property Tax website

Michigan Land Title Standards

Property Classification Guidelines

Property Tax Information for Veterans and Military Personnel

Qualified Agricultural Property Exemption Guidelines

Transfer of Ownership Guidelines

**CONTACT INFORMATION**

**Principal Residence Exemption Unit:**

Phone…………………………………………………………………………………………………………….. (517) 335-7487

E-mail…………………………………………………………………………………………………………PRE@michigan.gov

Website…………………………………………………………………………………………….. www.michigan.gov/pre

**State Tax Commission:**

Phone…………………………………………………………………… …………………………………(517) 335-3429

E-mail……………………………………………………………………State-Tax-Commission@michigan.gov

Website…………………………………………………………………www.michigan.gov/statetaxcommission

**Michigan Tax Tribunal:**

Phone…………………………………………………………………………………………… ……… (517) 335-9760

E-mail……………………………………………………………………………………. taxtrib@michigan.gov

Website……………………………………………………………………………………www.michigan.gov/taxtrib